336

THE STATE OF OHIO, APPELLEE, v. WENGER, APPELLANT.

(No. 78-1285—Decided June 13, 1979.)

*Mr. Gregory S. Lashutka,* city attorney, and *Mr. Ronald J. O'Brien,* for appellee.

*Mr. R. William Meeks,* for appellant.

WILLIAM B. BROWN, J. This court is asked to decide whether the defendant was denied a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution, when the trial judge refused to instruct the jury as follows:

"The court instructs you that the use of force upon or toward the person of another is justifiable to protect a third person when: under the circumstances as the actor believes them to be, the person whom he seeks to protect, would be justified in using such protective force, and the

actor believes that his intervention is necessary for the protection of such other person."

As stated by Judge McCormac in his dissent in the Court of Appeals below:

"The question is solely a choice of law. One body of cases takes the position taken by the majority that a third party intervenor stands in the shoes of the person whom he is aiding and it is immaterial whether a reasonable person would have acted as did the intervening defendant. The policy of this rule of law is to require the intervenor to make certain of his rights before acting.

"The contrary rule of law is that an intervenor may aid another if it appears to be reasonably necessary even though based on a mistaken belief, even in the situation where the person who is aided would not have had the same right. The policy behind this rule of law is to encourage a person to assist another without being deterred by the knowledge that irrespective of good faith, notice, or apparent necessity, he may be criminally liable if mistaken."

Up until now, this court has never been asked to decide the issue of who may claim justifiable use of force when intervening on behalf of a stranger. Previously, our discussion on the subject of defense of third persons has been limited to those who are related by consanguinity, affinity, or who stand in a special relationship to the intervenor.

In *Sharp* v. *State* (1850), 19 Ohio 379, this court considered the intervention of a son on behalf of his father. In that case, this court found that special relationships permit intervention and exculpation if the party aided was without fault. The charge to the jury stated, at page 389, in part:

"That it was true, as a principle of law, that a son might justify an assault in defense of his father, if the father were not in the wrong."

In another case, *State* v. *Sheets* (1926), 115 Ohio St. 308, which dealt with the justifiable use of force by a husband to defend his wife, the jury charge once again provided, in part, that the use of force to defend a wife was proper

provided the wife was not at fault. It is clear that the special relationship provided an excuse or justification for the use of force if it had not been for the wrongdoing of the person to be aided.

Now, the appellant urges us to adopt a statement of the law taken from a portion of the Model Penal Code which the Ohio General Assembly has not adopted.[2] Appellant asks us to consider the circumstances as they appeared to him and to justify the use of force because he believed it was necessary. We have surveyed the case law and authority he raises, but we are not persuaded by them.[3]

We believe that the decisions of *Sharp* and *Sheets, supra,* are persuasive. A person who intervenes in a struggle and has no duty to do so, acts at his own peril if the person assisted was in the wrong.[4] One who intervenes on behalf of a stranger should not stand in better stead than one who intervenes on behalf of a blood relative. The re-

---

[2] Section 3.05(1) of Article 3 of the American Law Institute's Model Penal Code, at page 480.

[3] *State* v. *Penn* (1977), 89 Wash. 2d 63, 568 P. 2d 797; *State* v. *Graves* (1973), 18 N. C. App. 177, 196 S. E. 2d 582; *United States* v. *Grimes* (C. A. 7, 1969), 413 F. 2d 1376; *United States* v. *Kartman* (C. A. 9, 1969), 417 F. 2d 893; *Commonwealth* v. *Monico* (Mass. Sup. Ct. 1977), 366 N. E. 2d 1241; *People* v. *Smith* (1974), 19 Ill. App. 3d 704, 312 N. E. 2d 355; and Perkins on Criminal Law (2d Ed. 1969), at pages 1018-1022.

In addition, appellant argues that because he was mistaken as to the factual circumstances of the present case, he lacked the criminal *mens rea* to commit the crime of assault. Assault, as defined in R. C. 2903.13, requires that the person act knowingly. Motive, purpose or mistake of fact is no significance. Pursuant to R. C. 2901.22(B), "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." There is no question that the defendant intended to strike Officer Whalen in the back with the stick, and his motive or purpose for intervening has no bearing on the requirements for a conviction of assault.

[4] An analogy can be drawn to tort law. One who goes to the aid of another when he is under no duty to do so acts at his own peril. If he negligently injures the other person, then he must assume responsibility. Civil liability is now limited by statute. See R. C. 2305.23.

curring theme is that one who intervenes to help a stranger stands in the shoes of the person whom he is aiding, and if the person aided is the one at fault, then the intervenor is not justified in his use of force and is guilty of an assault. The present cause is similar to that in *People* v. *Young* (1962), 11 N. Y. 2d 274, 183 N. E. 2d 319.[5] In *Young*, the defendant jumped on a plain clothes officer who was a-tempting to lawfully arrest a third person, and the Court of Appeals of New York reversed the appellate court decision which had exonerated the defendant of any criminal liability. The court stated, at page 275, that "[t]he weight of authority holds * * * that one who goes to the aid of a third person does so at his own peril," and "[w]e agree with the settled policy of law in most jurisdictions that the right of a person to defend another ordinarily should not be greater than such person's right to defend himself."[6]

This court agrees with the following statement set forth in 6A Corpus Juris Secundum 485, Assault and Battery, Section 93:

"A third person certainly has no right to volunteer assistance or interpose resistance where the person wrongfully arrested makes no resistance, or where the arrest was in fact legal. Thus, *one who in good faith aggressively intervenes in a struggle between another person and a police officer in civilian dress attempting to effect the lawful arrest of the third person may be guilty of assault.*" (Emphasis added.)

In the present cause, the defendant was only entitled

---

[5]See, also, *Taylor* v. *United States* (D. C. App. 1977), 380 A. 2d 989, 994; *Thompson* v. *State* (1954), 37 Ala. App. 446, 70 So. 2d 282; *McHargue* v. *Commonwealth* (1929), 231 Ky. 82, 21 S. W. 2d 115; *Commonwealth* v. *Hounchell* (1939), 280 Ky. 217, 132 S. W. 2d 921; *State* v. *Best* (1922), 91 W. Va. 559, 113 S. E. 919.

[6]The law as stated in *People* v. *Young*, *supra*, may have been supplanted by the New York legislature. See 39 McKinney's Consol. Laws of New York, Penal Law, Section 35:15, and the Practice Commentaries following. We believe that any change in Ohio's current law should be initiated by the General Assembly if it so desires.

to use as much force as Ms. Pekel was privileged to use. Officer Whalen had informed her that she was under arrest and she resisted. Recently, we held in *Columbus* v. *Fraley* (1975), 41 Ohio St. 2d 173, that an arrestee is not justified in using force to resist an unlawful arrest unless the officer exerted unnecessary or excessive force. Here, where the officer was effecting a legal arrest without exerting unnecessary force, the arrestee clearly had no right to use force to resist the arrest. Therefore, neither did appellant.

In a case which is similar to the present one, *Purdy* v. *United States* (D. C. App. 1965), 210 A. 2d 1, the defendant appealed the trial court's refusal to charge the jury concerning the justifiable use of force to defend another. The appeals court held that there was no evidence establishing that the person to be defended had the right to defend himself. The court, at page 2, stated:

"That right * * * attaches only where the person being defended would have the right of self-defense."

Because the evidence herein clearly established that the officer was making a lawful arrest and that the arrestee had no right to use force or "defend" herself against the arrest, the trial court did not violate the defendant's constitutional rights when it refused to give the defendant's jury instructions. Therefore, the cases of *Cincinnati* v. *Epperson* (1969), 20 Ohio St. 2d 59, and *State* v. *Nelson* (1973), 36 Ohio St. 2d 79, cited by the appellant, do not apply.

The trial judge correctly assessed the law of this state prior to ruling on whether the defendant's instruction should be given. Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, MAHONEY, SWEENEY and LOCHER, JJ., concur.

HOLMES, J., concurs in the judgment.

MAHONEY, J., of the Ninth Appellate District, sitting for P. BROWN, J.

Holmes, J., concurs in the judgment, but dissents from the syllabus law of the case.

I prefer to take the position as did Judge McCormac of the Court of Appeals for Franklin County, *i. e.*, that the intervenor should not always have to stand in the shoes of the person whom he is aiding. As stated by Judge McCormac: "The contrary rule of law is that an intervenor may aid another if it appears to be reasonably necessary even though based on a mistaken belief, even in the situation where the person who is aided would not have had the same right. The policy behind this rule of law is to encourage a person to assist another without being deterred by the knowledge that irrespective of good faith, notice, or apparent necessity, he may be criminally liable if mistaken."

People in today's more volatile society are increasingly hestitant, if not reluctant, to become involved in aiding another who is in trouble or distress. It is my view that the adoption of a form of the Model Penal Code "defense of others" principle would be a sound and reasonable move.

The basis of the principle was stated in *State* v. *Graves* (1973), 18 N. C. App. 177, 181, 196 S. E. 2d 582, as follows:

"A private citizen has a right to go to the defense of another *if he has a well grounded belief that a felonious assault is about to be committed upon such other person.* In fact, it is his duty to interfere to prevent the supposed crime. * * * It is a matter for the jury to determine from the evidence under proper instructions if a defendant has such a well grounded belief that it will justify intervention in the defense of another." (Emphasis *sic.*)

The rule should however, in my view, contain the condition that the intervenor must have had a well-grounded belief in the necessity of the intervention. Or stated another way, in order for the intervenor to step out of the shoes of the one to be assisted, the intervenor must show that his actions would have been those of a reasonably prudent person under all the observed facts and circumstances.

Here, appellant's counsel requested the following instruction:

"The court instructs you that the use of force upon or toward the person of another is justifiable to protect a third person when: Under the circumstances as the actor believes them to be, the person whom he seeks to protect, would be justified in using such protective force; and the actor believes that his intervention is necessary for the protection of such other person."

This instruction did not set forth an acceptable standard in my view. This instruction places the determination of the situation to be only as the actor would believe it to be, rather than applying the standard of what a reasonably prudent person would do under the same circumstances.

Therefore, the trial court did not err in failing to give this specific requested instruction. Consequently, I would concur in affirmance of the judgment, but must dissent from the syllabus law of this case.