{¶ 1} This matter comes for consideration upon Appellant's brief and the record in the trial court. Appellee did not file a brief in this matter. Appellant Richard Kartman appeals the decision of the Belmont County Court East finding him guilty of domestic violence in violation of R.C. 2919.25(A) and disorderly conduct in violation of R.C. 2917.11(A)(1) after conducting a bench trial. This court must address whether the trial court erred in finding Kartman guilty of both counts against the manifest weight of the evidence. Because we conclude the verdicts were against the manifest weight of the evidence, we reverse the decision of the trial court.
 {¶ 2} Kartman and his girlfriend Christa Applegarth were visiting a campsite at Bend Fork Park in Belmont County. Applegarth had been drinking and wanted to leave the park. Kartman refused to give Applegarth the keys. Applegarth began throwing things out of Kartman's truck and a struggle ensued. Reports were made to John Walgren, a security guard employed by the park about the incident. When Walgren arrived on the scene, he pulled Kartman out of the truck and handed him over to the police. He was subsequently charged with domestic violence and disorderly conduct.
 {¶ 3} At trial, the State presented three witnesses including the security guard, the arresting officer, and the victim. Kartman did not take the stand or present any witnesses in his defense. After hearing all the testimony, the trial court found Kartman guilty of both disorderly conduct and domestic violence. It is from this decision Kartman now appeals.
 {¶ 4} As his first assignment of error, Kartman asserts:
 {¶ 5} "The trial court erred in finding the defendant guilty of domestic violence against the manifest weight of the evidence."
 {¶ 6} In order for us to reverse a judgment on the basis that a verdict is against the manifest weight of the evidence, we must unanimously disagree with the fact-finder's resolution of any conflicting testimony. State v. Thompkins, 78 Ohio St.3d 380, 389, 1997-Ohio-52. In taking on this role, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the fact-finder clearly lost her way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387. In making this analysis, we must be mindful that determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 7} Pursuant to R.C. 2919.25(A), the elements of domestic violence are knowingly causing or attempting to cause physical harm to a family or household member. A family or household member includes a former spouse and the natural parent of a child when the offender is the other parent. R.C. 2919.25(E)(1)(a)(i) and (b). The mental state required to prove domestic violence is knowingly. R.C. 2919.25(A). An offender performs knowingly if he is aware that his conduct will probably cause a certain result or be of a certain nature, regardless of his purpose. R.C. 2901.22(B).
 {¶ 8} Kartman argues his only intent was to remove his girlfriend from the vehicle before she could do any more damage either to the truck or to herself. However, motive and purpose are irrelevant when it comes to knowledge. State v. Young (1988), 37 Ohio St.3d 249, 253,525 N.E.2d 1363 citing State v. Wenger (1979), 58 Ohio St.2d 336, 339,390 N.E.2d 801. A defendant need not act with deliberate intent to act knowingly; if the result is probable, then the defendant acts with knowledge. Wenger, supra at 339.
 {¶ 9} Furthermore, R.C. 2919.25 does not require the State to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member. State v. Nielsen (1990), 66 Ohio App.3d 609,585 N.E.2d 906. One does not have to cause serious injury to be guilty of domestic violence; defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all. State v. Blonski (1997) 125 Ohio App.3d 103, 707 N.E.2d 1168.
 {¶ 10} In analyzing Kartman's claim, we find it helpful to review the testimony upon which the trial court based its decision. At the bench trial, Walgren testified he was called to respond to a possible disturbance in the park. When he arrived at the scene, Walgreen testified, "I got out of my truck and witnessed this gentleman here beating the crap out of his old lady in the truck."
 {¶ 11} Walgren initially stated he had seen Kartman "beating on" his girlfriend. Similarly, he explained, there were visible injuries on Applegarth, her shirt was ripped, and her eyes were red from crying. After cross-examination, Walgreen's story began to change. Walgren first testified when he pulled Kartman off of Applegarth, Applegarth screamed "[h]old on to him, I don't want him to beat me anymore." However, Walgreen then admitted he did not include Applegarth's excited utterance, "don't let him up", in his written statement given to the police. Significantly, Walgren conceded he never mentioned in his statement to the police that he witnessed Kartman strike his girlfriend. Rather, he just assumed from their positioning in the truck that Kartman was beating her.
 {¶ 12} Walgren explained Applegarth's feet were up in the air and her head was down towards the floorboard. It appeared Kartman may have had a hand holding on to Applegarth but Walgren could not see clearly what was happening due to the muddied windows of the truck. Although he didn't see much more than this, Walgren explained he was told by several campers "he was back there beating the hell out of* * *" Walgreen stated that was the only reason he assumed Kartman was beating Applegarth. Notably, Walgren could not identify any of these campers subsequent to the arrest.
 {¶ 13} He again recanted his original testimony and admitted Applegarth was not bruised but was only red in the face. In actuality, Walgren admitted Kartman received injuries from Walgren throwing him down into the gravel next to the truck. Yuhase, the arresting officer, similarly testified she had noticed no marks on Applegarth's body, however, her face was red and she was very upset. When Yuhase asked Applegarth how her shirt became ripped, Applegarth first stated it had been ripped while Kartman was pulled off of her. Then she told Yuhase it had been ripped earlier when she was riding a four-wheeler.
 {¶ 14} Applegarth testified at trial as a witness for the prosecution. Significantly, her version of the incident appears to be consistent with the two other witnesses presented on the State's behalf. Applegarth testified she wanted to go home but Kartman refused to give her the keys. When Walgreen arrived at the scene, Kartman was trying to pull her out of the truck. However, Kartman did not cause her physical harm, nor did he attempt to cause her physical harm. In fact, Applegarth thinks she remembers kicking Kartman.
 {¶ 15} Applegarth claimed she was drunk, angry, and furious. However, she admitted, when she drinks, she doesn't remember half the things she does. She has had alcoholic blackouts and was therefore being treated at "Crossroads." She didn't remember her shirt being ripped, nor does she remember saying anything to Walgren. She does remember ripping off gauges from Kartman's dash and throwing everything out the window. After the incident, she had to take a neighbor back to the truck to clean up the oil gauge "`cause oil was squirting everywhere."
 {¶ 16} Applegarth further testified that when she drinks, she gets violent. This was supported by Walgren's testimony that, after he pulled Kartman out of the truck, Kartman told him his girlfriend should not have been drinking. "When she drinks, she flips out." Importantly, Applegarth stated she has injured Kartman on previous occasions. Kartman has called 911 numerous times because of her violent tendencies. Although Applegarth was not arrested on these occasions, Kartman was taken into custody because the police believed her side of the story.
 {¶ 17} After the arrest made in this case, Yuhase stated she spoke with Kartman about Applegarth's drinking. Kartman told Yuhase that Applegarth was in counseling and he was her AA sponsor. He was upset with Applegarth when he discovered her drinking at the campsite. He also told Yuhase that Applegarth had gone ballistic in the vehicle. Kartman told Yuhase he got into the vehicle so that he could prevent Applegarth from causing further damage to the vehicle.
 {¶ 18} With respect to the arrest and subsequent procedure, Walgreen testified he had never been trained as a security officer. He previously worked for several bonding companies picking up bail jumpers, similarly without training. He further admitted he had no authority to arrest Kartman. Walgreen simply pulled Kartman out of the truck and turned him over to the police who then took Kartman to jail.
 {¶ 19} When requested by both Applegarth and Kartman to get statements from witnesses who observed the events, Walgreen testified he refused because "that wasn't my job to get statements." However, Walgreen did later take a police officer back to the scene to question witnesses but no written statements were taken. Kartman likewise encouraged Yuhase to take witness statements, however, she also failed to do so.
 {¶ 20} After hearing this testimony, the trial court explained its findings of guilt stating:
 {¶ 21} "it just appears to me that the defendant took the situation in his own hands. I mean, if she was in the truck doing damage and, you know, trying to get her out of the truck it appears he's assaulting her. He wasn't acting in self defense. He didn't call the Sheriff's Office or anybody to assist him. He just decided to go up there, he's on top of her, ripping her shirt, there's red marks and she's crying, and it's all consistent with an assault or domestic violence, and her first words when somebody else arrived is to get him off of her so he stops hitting her. She doesn't remember that today. That appears to be what happened when we're right in the middle of this altercation. It doesn't appear to be self-defense or just trying to remove somebody from a truck. I mean, he was in my opinion was going to throw her on the ground as soon as he got her out of the truck, and this is consistent with an assault, and the Court is going to find the defendant guilty on both counts of domestic violence and disorderly conduct."
 {¶ 22} We find several problems with the trial court's reasoning. First, the trial court mistakenly states Kartman ripped Applegarth's shirt and caused red marks. There was no evidence adduced at trial establishing Kartman ripped the shirt. Moreover, Walgreen retracted the only testimony regarding bruising when he admitted Applegarth did not have any bruises, merely a red face. Furthermore, it appears from this statement, the trial court thought Kartman might attempt to cause physical harm in the future, which is not an element of the offense.
 {¶ 23} It appears the only evidence Kartman struck Applegarth was the alleged excited utterance made by Applegarth that Walgreen failed to include in his written statement. In fact, Walgreen testified the only reason he pulled Kartman out of the truck was because he had been told by ten unidentified witnesses that Kartman was beating his girlfriend. Every witness who took the stand admitted that there was a struggle between Applegarth and Kartman. However, there were no witnesses to the alleged "beating." To the contrary, Applegarth testified she thought she had been kicking Kartman.
 {¶ 24} Moreover, Applegarth admitted she became violent when she drank and had injured Kartman on several prior occasions. Notably, Applegarth, the only witness to the alleged "assault", requested Kartman not be charged with domestic violence both at the time of the arrest and at trial. However, Yuhase testified Applegarth was adamant about Kartman not going to jail because they were trying to regain custody of their child. However, we find it crucial Applegarth gave testimony consistent with the other three state witnesses. Even more important, Applegarth testified she may have actually been the aggressor.
 {¶ 25} In light of all the testimony, we are convinced the fact-finder clearly lost its way when making its decision and conclude the verdict with respect to the domestic violence charge to be against the manifest weight of the evidence. Kartman's first assigned error is meritorious.
 {¶ 26} Kartman's second assignment of error asserts:
 {¶ 27} "The trial court erred in finding the defendant guilty of disorderly conduct against the manifest weight of the evidence."
 {¶ 28} As a preliminary matter, we note there appears to have been some confusion at the trial level as to why Kartman was charged with disorderly conduct. Initially, as evidenced by the complaint, Kartman was charged with violating 2917.11(A)(1) with respect to his actions towards Applegarth. However, the arresting officer who filled out and signed the complaint testified at trial she charged him with disorderly conduct based on his uncooperativeness towards her.
 {¶ 29} Crim.R. 7(D) permits amendment of the complaint at any time before, during, or after a trial with respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. See, also, R.C. 2941.30; State v. O'Brien (1987),30 Ohio St.3d 122, paragraph two of the syllabus.
 {¶ 30} In the present case, however, the complaint was never amended. The Sixth Amendment to the United States Constitution states in part that "[i]n all criminal prosecutions, the accused shall * * * be informed of the nature and cause of the accusation." Kartman was only put on notice as to the disorderly conduct charge relating to Applegarth. It appears any testimony relating to the conduct directed towards the officer would be irrelevant to the charge listed in the complaint and should have been disregarded by the trial court.
 {¶ 31} Consequently, this court must look only to the facts surrounding the domestic violence charge to determine whether they would support a conviction for disorderly conduct. Pursuant to R.C.2917.11(A)(1), the section listed in the complaint:
 {¶ 32} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
 {¶ 33} Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."
 {¶ 34} In the present case, we find that the trier of fact once again lost its way when determining that Kartman was guilty of disorderly conduct. For much the same reasons as why we reversed Kartman's conviction for domestic violence, so too must we reverse his conviction of disorderly conduct. We find that no credible evidence was presented which would establish Kartman was the aggressor in this case or that he was doing anything more than preventing his intoxicated girlfriend from injuring herself.
 {¶ 35} After reviewing all the evidence, we conclude the trier of fact could not have reasonably concluded Applegarth was inconvenienced, annoyed, or alarmed by Kartman's actions. Because Kartman's conviction of disorderly conduct is against the manifest weight of the evidence, Kartman's second assignment of error is meritorious.
 {¶ 36} For the foregoing reasons we reverse the decision of the trial court and vacate Kartman's conviction and sentence.
Vukovich, P.J., concurs.
Donofrio, J., concurs.