DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence. The trial court, after a bench trial, found Brad Smith, defendant below and appellant herein, guilty of the crime of disorderly conduct in violation of R.C. 2917.11. Appellant raises one assignment of error for review:
"The Verdict Of The Municipal Court Of Washington County, Ohio Is Inconsistent With The Weight Of The Evidence Established At Trial."
¶ 2 On December 24, 2001, a fracas erupted that involved the victim Doug Gardner, Appellant Brad Smith, appellant's spouse Melissa Jo Smith, and appellant's father-in-law Dwight Riggs.[1] At trial, the victim and the defendants presented evidence that conflicted on every point.
 {¶ 3} Doug Gardner testified that on December 24, 2001, he was driving his vehicle on Jennings Hill Road and that he observed Dwight Riggs standing on Riggs' own property. Gardner stopped his vehicle to "discuss" damage to Riggs' fence. Gardner stated that a confrontation began when Riggs walked onto the public road and began cursing, then bumped chests and threw a punch that landed on Gardner's forehead. Gardner then pushed Riggs backward into a ditch. At this time, appellant struck Gardner in the head. Gardner then struck appellant. Soon, Riggs and appellant took Gardner to the ground while Riggs, appellant, and Melissa Smith began to hit Gardner. Riggs then ran to his barn and returned with two boards (two 2X6 boards approximately two feet in length) that he and appellant used to strike Gardner.
 {¶ 4} During the melee, Mary Miracle, a "disinterested" witness, happened to drive by the property. Miracle testified that she observed (1) Riggs, appellant and Smith all fighting with Gardner; (2) Melissa Smith run past her; and (3) Riggs retrieve two boards from his barn and strike Gardner with the boards. Miracle blew her car horn until the participants stopped their activities.
 {¶ 5} Dwight Riggs testified that Gardner, who had previously been involved in a relationship with Melissa Riggs Smith, continued to make unwanted advances toward Melissa and that Gardner had earlier confronted Melissa and her husband, the appellant. Also, in early December 2001, Dwight Riggs became aware that some recently felled trees had damaged his fence. Riggs learned from the landowner (Burkhart) on which the trees were located that Gardner had cut the trees and that Gardner must repair the fence. Dwight Riggs testified that on the date in question, he stood on his property with his daughter (Melissa) and his son-in-law (appellant), when Gardner stopped his vehicle. Gardner then exited his vehicle and began to scream at Riggs, using profanity and derogatory names, and threatening a law suit. Apparently, Gardner was upset that Riggs had contacted Burkhart about the fence. When Gardner moved toward Riggs, Riggs told him to get back into his vehicle and to leave. Gardner did not comply with Riggs' request and he continued to come toward Riggs. Dwight Riggs acknowledged that he left his property and walked onto the roadway to confront Gardner.
 {¶ 6} Once again, Riggs asked Gardner to leave. Gardner then stepped on Riggs' left foot. Riggs then attempted to shove Gardner off of Riggs' foot and Gardner struck Riggs' chest with his fists. Riggs then lost his balance and stumbled backward into a ditch. Gardner then jumped atop Riggs and appellant jumped atop Gardner. Riggs ran to his barn, retrieved a 2X6 board and held up the board and threatened to strike Gardner. Gardner knocked the board from Riggs' hands and appellant again jumped atop Gardner. Gardner then knocked appellant to the ground and began kicking him in the head. Riggs again ran to the barn to find another board and he told Melissa to call the Sheriff's Department. At this juncture, Miracle drove by and observed all three defendants striking Gardner and Riggs and appellant striking Gardner on the head with the two 2X6's. We note, however, that both Riggs and appellant denied striking Gardner with the boards. When Melissa left the scene to call the Sheriff's Department, Gardner got into his vehicle and left the scene.
 {¶ 7} All combatants were eventually charged with a minor misdemeanor disorderly conduct violation. Prior to trial, however, the prosecution dismissed the charge against Gardner. After hearing the evidence and counsels' arguments, the court found appellant (and Melissa Smith and Dwight Riggs) guilty as charged.[2] The court fined appellant $100 and assessed court costs. Appellant filed a timely notice of appeal.
 {¶ 8} In his sole assignment of error, appellant asserts that the trial court's judgment is against the manifest weight of the evidence. Specifically, appellant argues that the trier of fact should have believed appellant's (and Riggs') account of the story and accepted that Gardner initiated the altercation and that appellant acted only to assist Riggs in his self defense. The prosecution argues that (1) the evidence adduced at trial supports the trial court's judgment and (2) appellant's argument should be rejected because (a) Riggs, not Gardner, initiated the physical confrontation and, (b) at one point during the melee, appellant and Riggs could have ended the altercation but, instead, continued the fight.
 {¶ 9} Our analysis begins with the premise that self-defense is an affirmative defense and the burden of going forward with evidence to prove self-defense rests entirely on the accused. See R.C. 2901.05(A); also see State v. Palmer (1997), 80 Ohio St.3d 543, 563, 687 N.E.2d 685,703; State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, at the syllabus, affirmed in Martin v. Ohio (1987), 480 U.S. 228,94 L.Ed.2d 267, 107 S.Ct. 1098. To prove self-defense, the evidence must show that: (1) the accused was not at fault in creating the situation that gave rise to the affray; (2) the accused has a bona fide belief that he was in imminent danger of harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or to avoid the danger. State v. Williford
(1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, 1281; State v. Robbins
(1979), 58 Ohio St.2d 74, 388 N.E.2d 755, at paragraph two of the syllabus; State v. Melchior (1978), 56 Ohio St.2d 15, 20-21,381 N.E.2d 195, 199. See, also, Stewart v. State (1852), 1 Ohio St. 66;State v. Doty (1916), 94 Ohio St. 258, 113 N.E. 811.
 {¶ 10} Moreover, a person has the privilege to use necessary force to defend others if, in good faith and upon reasonable grounds, that person believes that another is in imminent danger of death or serious bodily harm. State v. Marsh (1990), 71 Ohio App.3d 64, 593 N.E.2d 35;State v. Sheets (1926), 115 Ohio St. 308, 152 N.E.2d 664; State v.Williford (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279; State v. Harris
(1998), 129 Ohio App.3d 527, 718 N.E.2d 488. However, a person may use force only if the person that the accused aids had the right to use force. State v. Wenger (1979), 58 Ohio St.2d 336, 390 N.E.2d 801. Thus, the third party intervenor "stands in the shoes" of the person the intervenor aids. Id.[3] Accordingly, one who uses force to intervene in a conflict on behalf of another may not invoke a privilege of self defense if the person defended was the aggressor in the conflict. Ellisv. State (1992), 64 Ohio St.3d 391, 596 N.E.2d 428.
 {¶ 11} In the case sub judice, we believe that the evidence adduced during the trial establishes that Dwight Riggs was at fault in creating the situation that gave rise to the altercation. This evidence reveals that Riggs physically confronted the victim in the public roadway. Thus, Riggs' own actions caused the altercation and a self-defense claim is inappropriate. Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense. State v. Vines (May 29, 1975), Cuyahoga App. No. 33871, unreported, citing Kohner v. State (1927), 6 Ohio L.Abs. 201; State v. Gibbs (Jan. 28, 1982), Lake App. No. 9-018, unreported, State v. Sanchez (Apr. 24, 1986), Cuyahoga App. No. 50566, unreported. See, also, State v. Moore (1994), 97 Ohio App.3d 137,646 N.E.2d 470; State v. Smith (June 27, 1985), Franklin App. No. 94APA12-1702; State v. Duiguid (May 12, 1983), Cuyahoga App. No. 45526, unreported. Furthermore, appellant could not invoke a self defense privilege in this situation in light of the fact (1) that Dwight Riggs, and not Gardner, was the aggressor in the fracas, and (2) appellant used more force than necessary to repel the attack. Conceivably, if the aggressor was sufficiently repelled and the initial nonaggressor nonetheless continued the fight, we could see a situation arise in which a person could properly intervene to assist the initial aggressor to stop the needless infliction of physical harm. We do not find these facts present in the instant case, however. Thus, we agree with the trial court's conclusion that the evidence adduced below did not support appellant's self-defense claim.
 {¶ 12} Appellant asserts, however, that the trial court's judgment is against the manifest weight of the evidence. We disagree.
 {¶ 13} It is fundamental that the weight to be afforded the evidence and the credibility to be given to the testimony of the witnesses are issues to be determined by the trier of fact. See State v.Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763, 768; State v.Frazier (1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, 1014; State v.Williams (1995), 73 Ohio St.3d 153, 165, 652 N.E.2d 721, 732. As such, the trier of fact may believe all, part or none of the testimony of each witness who appeared before it. See State v. Long (1998),127 Ohio App.3d 328, 335, 713 N.E.2d 1, 5; State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80, 88; State v. Harriston (1989),63 Ohio App.3d 58, 63, 577 N.E.2d 1144, 1147. We also acknowledge that the trier of fact is in a much better position than that of an appellate court to view the witnesses and observe their demeanor, their gestures and their voice inflections, and to use those observations to weigh the credibility of their testimony. See Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742, 745; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, reviewing courts should not second guess the trier of fact on matters of evidentiary weight and witness credibility.
 {¶ 14} We recognize that two vastly conflicting witness accounts exist concerning what actually transpired in this case. Gardner testified that Riggs walked to the public roadway and attacked him without provocation. Riggs claimed that he acted in self defense to repel Gardner's attack. Appellant asserts that he merely assisted Riggs in repelling Gardner's attack. Obviously, the trier of fact accepted the victim's testimony and we find no discernable reason why we should reject the trial court's determination. This Court will not reverse a conviction as being against the manifest weight of the evidence unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457, 473,698 N.E.2d 440, 450; State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814, 816; State v. Davis (1988), 49 Ohio App.3d 109,113, 550 N.E.2d 966, 969. In the case sub judice the trier of fact simply afforded greater weight to the victim's testimony, and the testimony of the disinterested passerby Mary Miracle, than to appellant, appellant's spouse and appellant's father-in-law. This was well within the trier of fact's province.
 {¶ 15} Accordingly, based upon the foregoing reasons we hereby affirm the trial court's judgment.
Evans, P.J. Harsha, J.: Concur in Judgment Opinion
[1] Additional facts can be found in the companion cases. See State v.Riggs, Washington App. No. 02CA74, and State v. Smith, Washington App. No. 02CA73.
[2] R.C. 2917.11, the disorderly conduct statute, provides in pertinent part:
A. No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following:
1. Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior.
[3] The Ohio "stands in the shoes" position outlined in Wenger has been the subject of substantial criticism. See American Law Institute, Model Penal Code and Commentaries 66 (1985). Commentators point out that the Ohio rule discourages bystanders from rendering assistance to people in need of assistance for the fear that the actor could be punished, even when he acts reasonably and in good faith, when the person the actor assists could not properly invoke the privilege of self defense.