OPINION
{¶ 1} Richard E. Sykes appeals from his conviction and sentence for misdemeanor assault in violation of R.C. § 2903.13.
 {¶ 2} Sykes advances three assignments of error on appeal. First, he contends his conviction is against the manifest weight of the evidence because the State presented insufficient evidence to prove each element of assault. Second, he claims his conviction is erroneous because he proved defense of another by a preponderance of the evidence. Third, he argues that his conviction is erroneous because he proved self defense by a preponderance of the evidence.
 {¶ 3} The record reflects that Sykes stopped for gas at a Speedway station on November 20, 2005. While there, he observed an argument between Gary Gibson and his wife, June. The Gibsons had driven separate vehicles to the station and were parked on opposite sides of a pump. On the way to the station, June thought she had seen Gary toss a cigarette out of his vehicle. Angered by her suspicion that her husband was smoking, June confronted him at the Speedway. Although the details of the incident were disputed at trial, Gary and June admittedly began arguing loudly. Gary also grabbed June's jacket and pulled her to his SUV so she could smell the interior. Sykes observed the incident and approached the Gibsons. After exchanging words with Gary, Sykes punched him in the face. Sykes then escorted Gary into the Speedway station. Once inside, he pushed Gary into a display rack. Police subsequently arrived and cited Gary and June for disorderly conduct. Sykes was arrested and charged with misdemeanor assault.
 {¶ 4} Sykes' case proceeded to a bench trial on February 13, 2006. At trial, Gary testified that during the argument with his wife, he grabbed her coat and pulled her to his vehicle so she could smell the interior. Gary denied hitting, kicking, or kneeing his wife. He also denied pushing her into the SUV. Gary testified that as he and his wife were arguing, Sykes approached and wanted to know what was going on. In response, Gary explained that he was arguing with his wife about smoking and advised Sykes to "mind his own fucking business." According to Gary, Sykes then punched him in the cheek and said, "You're not going to treat a woman like that." Sykes allegedly proceeded to kick him in the back and lead him toward the Speedway store. Gary testified that after they entered the store, Sykes said it was his responsibility to teach Gary "a lesson." According to Gary, Sykes then grabbed him from behind and shoved his head into a Pepsi display rack.
 {¶ 5} June Gibson also testified at trial. She stated that Gary grabbed her collar during the argument and put her nose in the back seat of his vehicle so she could smell for smoke. According to June, she withdrew her face from the SUV as Sykes approached. June then turned toward her own car, where the Gibsons' children were screaming, while Gary and Sykes exchanged words. At some point, she heard Sykes tell Gary, "Don't be talking to a woman like that." Although June did not see Sykes punch Gary, she did see him push Gary toward the Speedway station. June denied that Gary hit her during the argument at the gas pump, and she had no recollection of him "kneeing" her either.
 {¶ 6} The next witness was Ian Rigsby, the clerk on duty at the Speedway station. Rigsby testified that June entered the store and asked him to call the police. While he was doing so, Rigsby saw Sykes enter the store holding Gary by the neck and collar. According to Rigsby, Sykes subsequently stood behind Gary and pushed him into a cabinet and display rack.
 {¶ 7} The State's final witness was John Pridemore, a Centerville police officer. Pridemore testified that he arrived on the scene and interviewed Sykes. According to Pridemore, Sykes explained that he had seen Gary grab June by the collar and start to shove her toward a car. Sykes told the officer that he intervened on June's behalf by punching Gary in the face and dragging him into the Speedway store.
 {¶ 8} Sykes next testified on his own behalf. Sykes stated that he intervened in the Gibsons' argument because he saw Gary shoving June's head into a car, and it appeared to him that Gary also was kicking or kneeing June in the back. Sykes testified that as he approached, Gary continued to hold June's coat and refused to let go. Sykes admitted that he then punched Gary in the face. He explained that he did so because he "didn't know what was going on" and feared a possible car jacking. According to Sykes, Gary then voluntarily went inside the Speedway store with him to wait for police to arrive. Sykes stated that, after entering the store, Gary abruptly turned toward him with clenched fists. Sykes feared that Gary might hit him. As a result, Sykes explained that he turned Gary back around and pushed him into a display rack as a means of protection.
 {¶ 9} In his closing argument, Sykes asserted two affirmative defenses: self defense and defense of others. The trial court rejected the defenses and found him guilty of assault. Sykes was fined $500 with $350 suspended. He also received a suspended ninety-day jail sentence and was placed on one year of probation. This timely appeal followed.
 {¶ 10} At the outset of his appellate brief, Sykes asserts that the trial court found him guilty based on his act of shoving Gary into the display rack inside the Speedway store. He construes the trial court's oral ruling from the bench as including a finding that he was justified in punching Gary at the gas pump. In each of his assignments of error, Sykes then contends the trial court erred in finding him guilty of assault based on the shoving incident inside the store. In response, the State contends the trial court did not find Sykes justified in punching Gary in the face. The State also contends the trial court's guilty verdict was not based solely on what transpired inside the store.
 {¶ 11} Based on our review of the record, we do not agree that the trial court actually found the punch in the face to be justified. Instead, it assumed, arguendo, that the punch was justified and proceeded to address the shoving incident inside the store. With regard to that incident, the trial court found no viable affirmative defense. The trial court then made a finding of guilt. Having reviewed the trial court's oral ruling, we agree with Sykes' claim that he was found guilty based solely on the shoving incident inside the store. Because the trial court presumed that the punch in the face was justified — apparently on a defense-of-another theory — it does not appear to have based its guilty verdict on that incident. Rather, the focus of the trial court's analysis was on the shoving incident inside the Speedway store. For purposes of our analysis, then, we too will determine whether Sykes' act of shoving Gary's head into a display rack constituted assault.
 {¶ 12} In his first assignment of error, Sykes argues that the shoving incident did not constitute assault because he did not knowingly cause or attempt to cause physical harm to Gary, as required by R.C. § 2903.13(A). In support, Sykes notes the absence of evidence that the shove resulted in any "physical harm," which is defined as "injury, illness, or other physiological impairment, regardless of its gravity or duration." See R.C. § 2901.01(A)(3). Sykes also claims the State failed to prove an attempt to cause physical harm. On this issue, he cites his own testimony that he merely intended to push Gary away to prevent Gary from striking him. Sykes also contends the prosecution presented no evidence to establish his awareness that pushing Gary into the display rack probably would cause physical harm.
 {¶ 13} Upon review, we conclude that the evidence supports the trial court's guilty verdict on the assault charge. It is true that the record fails to reveal any observable injury to Gary as a result of the shoving incident. In our view, however, the trial court reasonably could have found that Sykes knowingly attempted to cause physical harm by grabbing Gary from behind and shoving his head into a display rack for the express purpose of teaching him "a lesson." The trial court was not required to accept Sykes' testimony that Gary made an aggressive move and that Sykes merely intended to avoid being hit. The trial court's guilty verdict is based on sufficient evidence and is not against the manifest weight of the evidence. Accordingly, we overrule Sykes' first assignment of error.
 {¶ 14} In his second assignment of error, Sykes claims his conviction is erroneous because he proved defense of another by a preponderance of the evidence. Once again, this assignment of error concerns Sykes' act of shoving Gary inside the Speedway store. Sykes contends the trial court mistakenly found that June was not in the store when the shoving incident occurred. Sykes claims June was in the store and that he had a reasonable belief Gary might attempt to harm her. Therefore, he asserts that he was justified in shoving Gary to protect June.
 {¶ 15} Upon review, we find no merit in Sykes' second assignment of error. "When acting in defense of another, the actor `stands in the shoes' of the individual he is aiding such that the defense arises only where the person being defended would have the right of self-defense." State v. Murphy (Aug. 11, 1998), Franklin App. No. 97APA10-1357; State v. Wenger
(1979), 58 Ohio St.2d 336, 338. The trial court concluded that June was not in the Speedway store when Sykes shoved Gary. Therefore, it found no "close proximity" between June and Gary at the time of the shoving incident and no basis for a defense-of-another claim.
 {¶ 16} In our view, the trial court reasonably determined that June was not in the store when Sykes shoved Gary's head into a display rack. The record reflects that June first went into the store ahead of Sykes and Gary and asked Ian Rigsby, the clerk, to call the police. (Trial transcript at 42, 59). She then left the store at some point, leaving Sykes and Gary together inside, before entering again later. This is evident from Sykes' own testimony. According to Sykes, June entered the store while he and Gary were inside. (Id. at 61). June likewise testified that she entered the store to plead with Sykes, who was inside with Gary. (Id. at 28). At that time, June asked Sykes if she and her husband could leave. Sykes responded that he could not keep them there. (Id. at 61).
 {¶ 17} But if June entered the store ahead of Sykes and Gary to ask for the police to be called and entered when Sykes and Gary already were inside, then she necessarily must have left the store for a period of time after her initial entry. Based on June's testimony, she appears to have left prior to Sykes shoving Gary into the display rack. When she re-entered the store, all she saw was Sykes trying to push Gary into a back room. (Id. at 28). After speaking briefly to Sykes, she then left for a final time to wait with her children until the police arrived. (Id. at 29). Nowhere in her testimony did June mention seeing Sykes shove Gary into a display rack. Therefore, it appears that the shoving incident occurred while June was outside, after having asked the store clerk to call the police and before re-entering to speak to Sykes. At a minimum, Sykes failed to prove by a preponderance of the evidence that June was inside when he shoved Gary into the Pepsi display. As the proponent of the affirmative defense, Sykes bore the burden of proof on this issue. Therefore, the trial court did not err in rejecting his defense-of-another claim.[1] Sykes' second assignment of error is overruled.
 {¶ 18} In his third assignment of error, Sykes argues that his conviction is erroneous because he proved self defense by a preponderance of the evidence. This argument is based on his claim that he shoved Gary into the display rack as a means of protection because Gary had turned toward him with clenched fists.
 {¶ 19} In order to prove self defense, Sykes was required to establish, by a preponderance of the evidence, that (1) he was not at fault in creating the situation giving rise to the assault, (2) he honestly and reasonably believed he was in immediate danger of bodily harm, (3) his only means to protect himself was to use force, and (4) he did not violate a duty to retreat or avoid the danger. State v. Bean, Montgomery App. No. 19483, 2003-Ohio-2962, ¶ 16.
 {¶ 20} With regard to the second element, Sykes contends he honestly and reasonably believed he was in immediate danger of being hit because Gary made what he perceived as an aggressive move toward him. We note, however, that Sykes' testimony was controverted by Gary, who claimed Sykes grabbed him from behind when he wasn't looking and rammed his head into the display. (Trial transcript at 18). The trial court was not obligated to accept Sykes' version of events, and, based on Gary's testimony, the record supports the trial court's rejection of the self-defense claim. Sykes' third assignment of error is overruled.
 {¶ 21} The judgment of the Kettering Municipal Court is hereby affirmed.
Wolff, J., and Fain, J., concur.
[1] Parenthetically, we would find no error in the trial court's ruling even if June were inside the store when Sykes shoved Gary into the display. At trial, Sykes testified that he shoved Gary in order to protect himself. Sykes did not even allege that he shoved Gary to protect June from any potential harm inside the Speedway store. The record is devoid of evidence that Sykes had a reasonable basis to believe June was in any danger of imminent harm inside the store. Consequently, he could not prevail on a defense-of-another claim based on what transpired inside the store even if June were present.