[Cite as *State v. Frazier*, 2017-Ohio-8594.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 16 BE 0040 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CLIFF ALFRED CERO FRAZIER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                             Common Pleas of Belmont County,
                             Ohio
                             Case No. 16 CR 085

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:       Atty. Daniel P. Fry
                             Belmont County Prosecutor
                             Atty. Scott A. Lloyd
                             Assistant Prosecuting Attorney
                             147-A West Main Street
                             St. Clairsville, Ohio  43950

For Defendant-Appellant:      Atty. Timothy Young
                             Ohio Public Defender
                             Atty. Allen M. Vender
                             Assistant State Public Defender
                             250 East Broad Street, 14th Floor
                             Columbus, Ohio  43215

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

                             Dated:  November 13, 2017

WAITE, J.

**{¶1}** Appellant Cliff Alfred Cero Frazier appeals his conviction in Belmont County Common Pleas Court for felonious assault. Appellant raises two issues on appeal. The first is whether his trial counsel was ineffective for failing to request a jury instruction on aggravated assault, an inferior degree offense of felonious assault. The second is whether the verdict was against the manifest weight of the evidence. Based on the record, it is clear that trial counsel was not ineffective and the conviction was not against the manifest weight of the evidence. Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Factual and Procedural Background

**{¶2}** Kelli Mitchell ("Mitchell") had maintained romantic relationships with both Neal Bledsoe ("Bledsoe") and Appellant in the past. Mitchell was at one time engaged to Bledsoe but had broken the engagement and had begun a relationship with Appellant. At the time of the incident, Bledsoe was fifty-four years of age and had been employed as a construction worker and bouncer. He also had experience teaching self-defense and played two years of semiprofessional football. Appellant was forty-eight years of age and worked as an auto mechanic.

**{¶3}** In early February of 2016, Mitchell decided to end her relationship with Appellant, who was living with her and her two minor daughters. Initially, Appellant refused to leave the premises but ultimately agreed to move out. Mitchell decided that in order to avoid conflict she would leave the house for a week and stay with Bledsoe, giving Appellant time to remove his belongings and vacate the premises. Mitchell's ten year old daughter went to stay with her grandmother during this time.

Mitchell's sixteen year old daughter remained in the house with Appellant, but was only home to sleep. On February 8, 2016, Mitchell asked Bledsoe to take her back to the house and help replace the locks, as the older daughter told Mitchell that Appellant had moved out. On arriving at the home, Mitchell's dog got loose and Mitchell and her ten year old daughter went after the dog. Appellant was apparently driving past the residence and saw Mitchell and her daughter outside. Appellant offered to assist in getting the dog back. The dog was located and was taken back home with Mitchell's daughter, but Appellant and Mitchell remained outside in an alley behind the house to have a conversation. When her daughter and dog went into the house without Mitchell, Bledsoe asked the girl where her mother was. The daughter informed him that she was outside talking to Appellant. Bledsoe sent the older daughter out to ask Mitchell to return inside. The daughter returned, but said that her mother refused. Bledsoe called Mitchell's cell phone but Mitchell did not answer. The older daughter told Bledsoe to go outside and get her mother. Bledsoe testified that he was originally reluctant, but ultimately went outside looking for Mitchell.

{¶4} Once in the alley, he noted that Mitchell was crying and that she and Appellant were engaged in an emotional conversation. Bledsoe approached Mitchell, took her by the arm, and told her to come back in the house with her daughters. Mitchell replied, "I'm talking to Cliff right now. I'm a grown woman. I can come when I'm done." (Tr., p. 186.) Appellant then told Bledsoe to respect Mitchell's wishes and told him to leave. Mitchell testified that the two men began arguing and were "getting

louder and louder with arguments. [Bledsoe] was asking [Appellant] what do you want to do, what do you want to do about it. [Appellant] was calm." (Tr., p. 187.)

**{¶5}** Bledsoe and Appellant gave differing versions of events about the escalation of the confrontation. Bledsoe testified that he was still holding Mitchell's arm when he felt a hand across his chest which he believed was Appellant's. Bledsoe got into a defensive stance preparing for an attack when he noticed that he was bleeding profusely from his neck. (Tr., p. 171.) Bledsoe said he turned to leave but Appellant followed him, repeating multiple times, "you're going to bleed out" to Bledsoe. *Id.* Bledsoe testified that he walked to the next block and flagged down a passer-by, who drove him to the hospital emergency room where he was treated for his wounds; a slice directly across his neck which lacerated both jugular veins.

**{¶6}** Appellant testified that when Bledsoe came out into the alley, he was forceful with Mitchell about going into the house and would not let go of her arm. Appellant told the police in his initial interview that Bledsoe struck him first, but later testified at trial that Bledsoe's punch landed on Appellant simultaneously with his own stab to Bledsoe's neck. (Tr., p. 320.)

**{¶7}** Appellant said that after the altercation, he went to his truck, left the razor blade he had used to cut Bledsoe in his work glove inside of his toolbox, and then put both into the covered bed of the truck. Appellant let himself inside Mitchell's house, where he informed Mitchell that Bledsoe punched him, but did not inform her that he had stabbed Bledsoe. While at the hospital, Bledsoe identified Appellant as his assailant. A short time later two police officers went to Mitchell's home and

arrested Appellant. After being handcuffed, as he was being led to the police car, Appellant asked why he was being arrested. The officer informed him that he had been accused of stabbing Bledsoe. After Appellant was read his *Miranda* rights, he told police that Bledsoe struck him first and that he "hits like a bitch." He did not initially indicate that he was afraid of Bledsoe or that he was defending himself or Mitchell against Bledsoe. He also told the officers that he had dropped the weapon on the ground and did not immediately admit that he had hidden it in his truck. (Tr., pp. 217, 219, 239.) At trial, Appellant admitted that Bledsoe did not hit him first and that he never told the police he was acting in Mitchell's defense. (Tr., p. 319.)

{¶8} Mitchell testified that both Appellant and Bledsoe had been mentally abusive but that she had never suffered physical violence from either man. She testified that she and Bledsoe were friends, and that she approached him with her request to stay with him while Appellant was packing and moving out of her home. She testified that on the day of this incident she voluntarily remained in the alley to speak with Appellant, describing herself as "[a]n emotional wreck" and stating that she "was crying, confused. I still felt love for him but being manipulated." (Tr., p. 186.) Mitchell testified that she did not see who struck first during the altercation and that at no time did she believe Bledsoe was threatening her or that she was in any danger. (Tr., p. 188.)

{¶9} On April 6, 2016, Appellant was indicted on one count of felonious assault in violation of R.C. 2903.11. A jury trial was held on June 14-15, 2016. At trial Appellant raised the affirmative defenses of self-defense and defense of others.

The jury found Appellant guilty. Appellant was sentenced to eight years in prison on July 18, 2016. Appellant brings this appeal asserting two assignments of error.

ASSIGNMENT OF ERROR NO. 1

CLIFF FRAZIER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY FAILED TO REQUEST JURY INSTRUCTIONS FOR AGGRAVATED ASSAULT, WHICH IS AN INFERIOR-DEGREE OFFENSE OF FELONIOUS ASSAULT. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 1 AND 10, OF THE OHIO CONSTITUTION; *STRICKLAND v. WASHINGTON*, 466 U.S. 668, 687, 104 S.CT. 2052, 80 L.ED.2D 674 (1984); *STATE v. BRADLEY*, 42 OHIO ST.3D 136, 538 N.E.2D 373 (1989); TR. 331-349.

**{¶10}** Appellant was charged with felonious assault in violation of R.C. 2903.11 and the jury was instructed on the elements of felonious assault. Appellant contends trial counsel was ineffective for failing to request an instruction on aggravated assault.

**{¶11}** In a claim for ineffective assistance of counsel, a court must indulge in a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. Appellant bears the burden of demonstrating that counsel's performance fell below an objective standard of professional competence. If an appellant successfully demonstrates that counsel committed professional error, he must also show that he was prejudiced by that deficiency.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Deficient performance" means performance falling below an objective standard of reasonable representation. *Id.* at 687-688. "Prejudice," in this context, means a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

**{¶12}** An "ineffectiveness claim * * * is an attack on the fundamental fairness of the proceeding." "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 697, 670. An appellant's burden when challenging the effectiveness of counsel is to demonstrate that some action or inaction by counsel operated to undermine or call into question the integrity of the process that resulted in conviction. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

**{¶13}** The definition of felonious assault is found in R.C. 2903.11(A)(2) and states, in part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another." This contrasts with aggravated assault, where:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

* * *

Cause or attempt to cause physical harm to another.

R.C. 2903.12(A)(2). Aggravated assault, then, contains the mitigating circumstances of passion and provocation not found in the definition of felonious assault.

{¶14} Pursuant to statute, aggravated assault is not a lesser included offense of felonious assault. Instead it is an inferior degree offense. *State v. Deem,* 40 Ohio St.3d 205, 210. A trial court may give an instruction on the inferior offense of aggravated assault, when requested, only if there is evidence presented at trial on which the jury could reasonably acquit the defendant for the principal crime as charged, yet convict on the inferior offense. *Id.* at paragraph four of the syllabus.

{¶15} In this case, trial counsel did not request an instruction on aggravated assault. Failure to request an instruction on an inferior degree offense may be a matter of trial strategy. *State v. Walker*, 4th Dist. No. 99CA2494, 2000 WL 875954 (Jun. 26, 2000). When the defendant relies on the theory of self-defense, an instruction on the inferior degree offense may serve to confuse the jury, as it appears to contradict the theory of self-defense. Defense of self or others relies on fear of imminent bodily harm or death. Aggravated assault is based on acting in a sudden fit of passion or rage, and is not based on a defendant's fear of harm. Trial counsel may have considered this confusion by deciding not to argue both that the defendant acted in fear of his life but at the same time was provoked and acted in a fit of rage. Legitimate trial strategies do not form the basis for ineffective assistance of counsel claims. *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.

{¶16} Moreover, the facts in this record do not justify an instruction on aggravated assault. In order to request this instruction, the evidence would have to

demonstrate that Appellant was subjected to serious provocation by Bledsoe which was great enough to cause sudden passion or rage, inciting him to stab Bledsoe. The testimony from all three witnesses, Bledsoe, Mitchell, and Appellant himself, indicates that, at best, it is unclear who acted first. Witnesses agree that Appellant arrived at the scene already armed with a razor blade. This preparation alone would seem to indicate that whatever provoked Appellant to stab Bledsoe, it was not caused by a sudden fit of rage. The evidence also reveals that Bledsoe retreated after being stabbed, while Appellant continued to follow him, taunting him that he would "bleed out." While the two men engaged in an escalation of their verbal argument, this does not appear to have been suddenly ignited by any action on the part of Bledsoe, at least in sufficient degree to justify Appellant's use of a razor to stab Bledsoe. At trial, Appellant never stated that he was threatened by or afraid of Bledsoe and testified that he stabbed Bledsoe simultaneously with Bledsoe's punch. It is clear the parties disliked each other and that was perhaps provoked by the presence of Mitchell and her emotional state, but no witness testified to any action that would spark the kind of provocation necessary to justify an instruction on aggravated assault. "To be serious, the provocation must bring on extreme stress and be reasonably sufficient to incite the defendant into using deadly force." *State v. Combs,* 5th Dist. No. 2001 CA 00222, 2002-Ohio-1136, ¶ 18, citing *Deem*, at paragraph five of the syllabus.

{¶17} For these reasons alone we cannot conclude that trial counsel was ineffective. A review of all evidence presented at trial reveals no basis to support a

jury instruction on aggravated assault.  Appellant's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT VIOLATED CLIFF FRAZIER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR FELONIOUS ASSAULT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.  FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION; *STATE v. THOMPKINS*, 78 OHIO ST.3D 380, 387, 678 N.E.2D 541 (1997); JULY 20, 2016 JOURNAL ENTRY.

**{¶18}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."  (Emphasis deleted.)  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  "Weight is not a question of mathematics, but depends on its effect in inducing belief."  (Emphasis deleted.)  *Id.*

**{¶19}** When reviewing a manifest weight of the evidence argument, a reviewing court must examine the entire record, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Id.* at 387, 389.  Only in exceptional circumstances will a conviction be reversed as against the manifest

weight of the evidence. *Id.* This strict test for manifest weight acknowledges that credibility is generally the province of the factfinder who sits in the best position to accurately assess the credibility of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶20}** Appellant claims that his conviction is against the manifest weight of the evidence because the evidence "overwhelmingly" demonstrates he acted in self-defense and defense of others. Self-defense is an affirmative defense.

> To establish self-defense, a defendant must prove *** (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 72, quoting *State v. Barnes,* 94 Ohio St.3d 21, 24, 2002-Ohio-68.

**{¶21}** To assert an affirmative defense of defense of others a defendant must prove that he was protecting another person from immediate danger of bodily harm and that the other person would be able to assert the defense for him- or herself. *State v. Wenger,* 58 Ohio St.2d 336, 390 N.E.2d 801 (1979). A defendant invoking the defense of others defense is only entitled to use as much force as the person being defended would be permitted to use. *Id.*

**{¶22}** Bledsoe and Appellant have contradictory versions of what occurred on the night of the altercation. Bledsoe testified that he went outside only after being prompted by Mitchell's daughter to get her mother. He says he was merely trying to get Mitchell to go back into the house when he was attacked by Appellant. Appellant testified that he only attacked when Bledsoe kept holding Mitchell's arm. Appellant also testified that while Bledsoe punched him, the punching and stabbing took place at "the same time," which works completely against his theory of self-defense. Police noted a red mark above Appellant's eye and a bit of dried blood under his nose. Bledsoe had both jugular veins cut, requiring two surgeries. Appellant argues Bledsoe was a large man who worked occasionally as a bouncer at a bar and played two years of semi-professional football; however, Appellant arrived at the scene already carrying a razor blade, which he promptly concealed in his truck after the altercation.

**{¶23}** We also note that while Appellant claimed at trial that he feared Bledsoe and that he believed Mitchell was in some danger, this is clearly not what he told police immediately after his arrest. He never relayed to police that he feared Bledsoe and, in fact, Appellant stated that Bledsoe "hits like a bitch" more than once.

**{¶24}** For her part, Mitchell testified that she was never afraid of Bledsoe during the altercation and that she never expressed any fear to Appellant. Mitchell could not confirm who began the physical altercation. She claims she was not aware that Appellant had been punched, nor that Appellant stabbed Bledsoe, until sometime later in the evening.

**{¶25}** The two versions of events put forth by Bledsoe and Appellant differ. Bledsoe claims that Appellant was the initial aggressor. Bledsoe's version clearly does not help support Appellant's theories of affirmative defense. Portions of Appellant's own testimony also undermine his theory of self-defense and defense of others. As discussed, Mitchell's testimony also does not help Appellant. A review of the record reveals that both Bledsoe and Appellant have credibility problems. Questions of credibility are to be resolved by the jury. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must "be guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). The finder of fact is best able to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

**{¶26}** Even disregarding credibility issues, however, Appellant never offered any evidence in support of his affirmative defenses. He offered no evidence that he was in fear of great bodily harm or death on his own behalf or on Mitchell's at the time he stabbed Bledsoe. His testimony actually contradicted this requirement at times. Given the evidence in the record, we do not find that the verdict was against the manifest weight of the evidence. Appellant's second assignment of error is without merit and is overruled.

**{¶27}** Based on the above, Appellant's trial counsel was not ineffective and Appellant's conviction on felonious assault was not against the manifest weight of the

evidence presented. Appellant's assignments of error are without merit and the judgment of the Belmont County Court of Common Pleas is affirmed.

DeGenaro, J., concurs.

Robb, P.J., concurs.