OPINION
{¶ 1} DEFENDANTS, JALANI SEALS, DALE BURTON, SR., AND TRIANA BURTON, APPEAL FROM THEIR CONVICTIONS AND SENTENCES FOR FELONIOUS ASSAULT.
{¶ 2} This case arises out of a fight that occurred on the afternoon of April 18, 2003, at 201 East Madison Avenue, in Springfield. That is the residence of Matthew Kurtz, one of the two victims of the offenses of which Defendants were convicted. The other victim is Kurtz's friend, Jason Barlow. The three defendants are Kurtz's next door neighbors.
{¶ 3} Kurtz returned to his home accompanied by Jason Barlow and Sherman Draper, following a golf outing. Kurtz and Barlow had been drinking. When the men arrived, twelve year old Otto Burton was outside, waiting for an ice cream truck. According to Otto Burton, who is African-American, the men directed a racial insult at him, which he immediately relayed to his mother.
{¶ 4} Soon, several members of the Burton family including Mrs. Burton, Otto Burton, Triana Burton and her boyfriend, Jalani Seals, came outside and walked over to Kurtz's residence, where they angrily confronted Kurtz and Barlow about the racial comment. At this point the testimony by the State's witnesses and Defendants' witnesses differs about what happened next.
{¶ 5} According to the State's witnesses, which includes the two victims and several eyewitnesses to the fight, Seals started the fight by sucker punching Kurtz, knocking him out. Barlow then began fighting with Seals, Otto Burton and Triana Burton. At some point, Dale Burton, the father of Otto and Triana, arrived on the scene after being called by Mrs. Burton. He joined in the fight saying: "I'm going to kill them." During the fight Barlow was knocked to the ground, and while lying there he was punched, kicked and hit with golf clubs by Dale Burton, Otto Burton, Triana Burton and Jalani Seals. Barlow also was stabbed in his lower left leg near the ankle. While Barlow was being beaten, Kurtz regained consciousness, stood up, and saw what was happening to Barlow. Moments later Dale Burton walked over to Kurtz and hit him in the head with a golf club, knocking Kurtz out again. Dale Burton then walked back over to Barlow, who was still on the ground, and resumed beating him.
{¶ 6} Eventually, Barlow was able to get to his feet and he ran toward the back of the house while calling 911. Dale Burton chased Barlow. When Barlow tried to climb over a wooden picket fence to escape, his foot was caught and the fence collapsed, causing Barlow to fall. Barlow crawled back around to the front porch where he collapsed. Barlow suffered a fractured rib, multiple bruises and a severe stab wound to his lower left leg, which became infected and required five days hospitalization. Kurtz suffered a fractured skull and an injury to his brain which required surgery. That injury, which was consistent with being hit in the head with a golf club, resulted in some temporary paralysis and partial numbness in his right hand.
{¶ 7} The defense witnesses, which include Mrs. Burton, Otto Burton and Dale Burton, Sr., claim that Kurtz and Barlow were the aggressors and that they started the fight when they attacked Seals, Otto Burton, Mrs. Burton and Triana Burton. Defendants claim that Seals and Triana Burton were simply defending themselves, that Dale Burton was defending his children, Otto Burton and Triana Burton, against attack by Kurtz and Barlow, and that in any event the conduct of the defendants was caused by serious provocation by the victims. Defendants deny that golf clubs or any other weapons were used during the fight, or that Barlow was beaten by three or four people while down on the ground. According to the defense witnesses, Kurtz received his head injury when Sherman Draper threw a brick at Dale Burton and it missed but struck Kurtz in the head, and he fell and hit his head on a tree stump.
{¶ 8} Defendants were each indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(1). All three Defendants were represented at trial by the same attorney. Defendants waived their right to a jury trial. Following a trial to the court, Dale Burton, Sr., and Jalani Seals were found guilty of both counts of felonious assault. The trial court sentenced them to concurrent prison terms of four years on each count. Triana Burton was found guilty of felonious assault as it pertains to Jason Barlow, but not guilty of the count pertaining to Matthew Kurtz. The trial court sentenced Triana Burton to two years in prison.
{¶ 9} Defendants timely appealed to this court from their convictions and sentences. Each defendant is represented by separate counsel, but their appeals have been consolidated under a single case number.
FIRST ASSIGNMENT OF ERROR OF JALANI SEALS
{¶ 10} "APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS HIS ATTORNEY REPRESENTED MULTIPLE CO-DEFENDANT'S WITH CLEARLY CONFLICTING INTERESTS.
FIRST ASSIGNMENT OF ERROR OF DALE BURTON, SR.
{¶ 11} "APPELLANT WAS NOT PERMITTED THE ASSISTANCE OF EFFECTIVE COUNSEL AT TRIAL AS HIS ATTORNEY LABORED UNDER A CONFLICT OF INTEREST IN REPRESENTING MULTIPLE DEFENDANTS."
FIRST ASSIGNMENT OF ERROR OF TRIANA BURTON
{¶ 12} "APPELLANT WAS DEPRIVED OF HER RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S AND THE COURT'S FAILURE TO FAIRLY AND ADEQUATELY PROTECT HER INTERESTS DUE TO SAID COUNSEL'S CONFLICTS IN REPRESENTATION OF MULTIPLE CLIENTS/CO-DEFENDANTS IN CONTRAVENTION OF THESIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."
{¶ 13} All three Defendants in their first assignment of error argue that they were deprived of effective assistance of counsel at trial due to a conflict of interest arising from multiple representation of all three Defendants by the same attorney. Defendants further claim that the trial court violated its duty to inquire into the propriety of this multiple representation.
{¶ 14} Unless the trial court knows or reasonably should know that a particular conflict of interest exists, or unless the defendant objects to multiple representation, the trial court need not initiate an inquiry into the propriety of such representation. Cuyler v. Sullivan (1980),446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333; State v. Manross (1988), 40 Ohio St.3d 180. An attorney representing multiple defendants in criminal proceedings is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop during the course of the trial. Manross, supra. Therefore, it is reasonable for the trial court to assume that multiple representation entails no conflict, or that the lawyer and/or his clients knowingly accepted the risk of a conflict in multiple representation. Cuyler, supra; Manross, supra. Although it is not constitutionally mandated that the trial court inquire of co-defendants whether they wish to be represented by separate counsel, that is clearly the better practice. Manross, supra.
{¶ 15} Because neither defendants nor their counsel objected to the multiple representation in this case, the trial court did not err by failing to inquire into that issue. Manross, supra. Moreover, in order to establish a violation of the Sixth Amendment right to effective assistance of counsel, a defendant who fails to object to joint representation at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler, supra; Manross, supra. A reviewing court cannot presume that the mere possibility of a conflict resulted in ineffective assistance of counsel. Manross, supra. A possible conflict of interest is inherent in almost all instances of joint or multiple representation. Cuyler, supra. The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction. Manross, supra. An actual conflict of interest must be shown. State v. Gillard, 78 Ohio St.3d 548, 1997-Ohio-183.
{¶ 16} The term "conflict of interest" involves circumstances in which regard for one duty tends to lead to disregard of another duty, such as when there is representation of multiple clients with incompatible interests. Manross, supra. A possible conflict of interest exists where the interests of the defendants may diverge at some point, so as to place the attorney under inconsistent duties, but an actual conflict of interest is shown where during the course of the representation the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action. Gillard. A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose. Columbus Bar Assn. V. Grelle (1968), 14 Ohio St.2d 208; Manross, supra. In order to demonstrate an actual conflict of interest based upon what an attorney has failed to do, a defendant must demonstrate that same plausible alternative defense strategy or tactic that has sufficient substance to be at least viable might have been pursued but was not undertaken due to the attorney's conflicting loyalties or interests. Gillard.
{¶ 17} Defendants each argue that had they each been represented by separate counsel at trial, they could have pursued an alternative defense strategy of claiming that it was their co-defendants and not them who were responsible for the serious physical harm inflicted upon each victim. On this record that theory or strategy is not supported by the evidence and is at best speculative.
{¶ 18} In finding Defendants guilty, the trial court concluded that, based upon the evidence presented, it was virtually impossible to determine which blow delivered by which Defendant had caused the serious physical harm to each victim. We agree. These Defendants clearly acted in concert in causing the harm suffered by each victim, and it was the totality of the blows delivered by these Defendants that resulted in the serious physical harm suffered by the victims.
{¶ 19} We additionally note that the defenses presented by these Defendants, self-defense and defense of family/others, were consistent, similar, and not in conflict. The Defendants did not blame each other at trial for the serious physical harm inflicted upon the victims. The trial court, as trier of facts, limited its consideration of the statements made by each Defendant as evidence against that particular Defendant, and did not consider statements that implicated the other co-defendants. Finally, all of the defendants shared a common interest in attacking the credibility of the State's witnesses. No actual conflict of interest has been demonstrated, and ineffective assistance of counsel has not been shown. Manross, supra. While the potential for a conflict of interest arising from the multiple representation in this case is obvious, no actual conflict of interest adversely affecting counsel's performance has been demonstrated.
{¶ 20} The first assignments of error are overruled.
SECOND ASSIGNMENT OF ERROR OF JALANI SEALS
{¶ 21} THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT UPON MR. KURTZ AS APPELLANT'S CONDUCT IN REGARD TO MR. KURTZ DID NOT RISE TO THE LEVEL OF FELONIOUS ASSAULT."
{¶ 22} Defendant Seals argues that the evidence presented at trial is legally insufficient to sustain his conviction for felonious assault upon Matthew Kurtz. Seals acknowledges that he hit Kurtz once in the side of the head at the beginning of the fight, but claims that is the only blow he struck against Kurtz, and that is not the blow that caused Kurtz's serious head injuries, which is the serious physical harm Kurtz suffered. According to Seals, Kurtz's head injuries occurred when co-defendant Dale Burton hit Kurtz in the head with some type of object.
{¶ 23} Seals argues that he cannot be held liable for felonious assault upon a theory that he aided and abetted Dale Burton in knowingly causing serious physical harm to Kurtz because Seals did not share Burton's intent to cause serious physical harm. Thus, Seals contends that with respect to Matthew Kurtz, he is at most guilty of simple assault, R.C. 2903.12, a less serious offense. The State has failed to respond to this assignment of error.
{¶ 24} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259:
{¶ 25} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
{¶ 26} The trial court found, and we agree, that these three Defendants acted together in concert in causing serious physical harm to the victims during this fight. Each victim was struck by more than just one defendant, and it is virtually impossible to determine which blow by which Defendant caused serious physical harm. Rather, the totality of all of the blows by these Defendants resulted in serious physical harm to the victims.
{¶ 27} The complicity statute, R.C. 2923.03(A)(2), provides that no person acting with the kind of culpability required for the commission of the offense, shall aid or abet another in committing the offense. An aider or abettor shall be prosecuted and punished as if he were a principal offender. R.C. 2923.03(F). To aid or abet means to assist, incite or encourage. State v. Stepp (1997), 117 Ohio App.3d 561.
{¶ 28} The culpable mental state required for felonious assault is "knowingly." R.C. 2903.11(A). A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B).
{¶ 29} Here, the evidence presented by the State, construed most strongly in its favor, demonstrates that Seals started the fight by punching Kurtz in the head, knocking him out. Seals, Otto Burton and Triana Burton then began fighting with Barlow. When Dale Burton arrived on the scene, he picked up a brick and threatened to kill Kurtz and Barlow. Immediately prior to Dale Burton hitting Kurtz in the head with a golf club, all three Defendants, plus Otto Burton, participated in beating Barlow by punching, kicking and hitting him with weapons including a golf club, while Barlow was down on the ground.
{¶ 30} This evidence, when considered as a whole, is sufficient to prove that Seals knowingly assisted, incited or encouraged, that is aided or abetted, Dale Burton to knowingly cause serious physical harm to Matthew Kurtz. State v. Mendoza, 137 Ohio App.3d 336, 2000-Ohio-1689. A rational trier of facts could find the essential elements of felonious assault proven beyond a reasonable doubt. Defendant Seals' conviction for the felonious assault of Matthew Kurtz is therefore supported by legally sufficient evidence.
{¶ 31} This assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR OF DALE BURTON, SR.
{¶ 32} "THE TRIAL COURT ERRED BY FAILING TO CONSIDER WHETHER APPELLANT WAS ACTING IN DEFENSE OF OTHERS DURING THE ASSAULT OF MATTHEW KURTZ AND JASON BARLOW."
{¶ 33} Defendant Dale Burton argues that the trial court erred in failing to consider and find that he was acting justifiably in defense of his family when he assaulted Matthew Kurtz and Jason Barlow. The trial court considered but rejected the claim that these defendants were acting in self-defense, observing that such a defense is not available to a person who is the aggressor and starts the fight or violates a duty to retreat or avoid the danger. See: State v. Robbins (1979),58 Ohio St.2d 74.
{¶ 34} Defense of family, being a variation of self-defense, is an affirmative defense that the defendant has the burden of proving by a preponderance of the evidence. R.C. 2901.05(A); State v. Martin (1986),21 Ohio St.3d 91; State v. Jackson (1986), 22 Ohio St.3d 281. Ohio has long recognized a privilege to defend the members of one's family. Sharp v. State (1850), 19 Ohio 379. If a person in good faith and upon reasonable grounds believes that his wife and family are in imminent danger of death or serious bodily harm, that person is entitled to use such reasonably necessary force, even to the taking of life, to defend his wife and family as he would be entitled to use in defense of himself. State v. Williford (1990), 49 Ohio St.3d 247.
{¶ 35} The State responds that Dale Burton was not justified in using force in defense of his family because Burton's family was at fault in creating the affray, and therefore they were not entitled to claim self-defense themselves. A person who intervenes to help another stands in the shoes of the person whom he is aiding. If that person is at fault, and therefore not entitled to use force in self-defense, the intervenor is not justified in using force in that person's defense. See State v. Wenger (1979), 58 Ohio St.2d 336.
{¶ 36} The trial court found that these defendants were not privileged to use force in self-defense because they were at fault in starting the affray and they violated a duty to retreat or avoid the danger. We agree that the evidence presented is not sufficient to demonstrate the justifiable use of force by Dale Burton in defense of his family members.
{¶ 37} The evidence presented by the State clearly demonstrates that the Burtons were at fault in creating the situation giving rise to this affray and they started this fight when Seals punched Matthew Kurtz in the side of the head, knocking him out. Even the testimony by the defense witnesses demonstrates that the first physical contact was initiated by the Burtons when Seals pushed Kurtz down to the ground. Furthermore, this altercation occurred solely in parts of the yard surrounding the Kurtz's residence. There is no evidence suggesting that members of the Burton family were unable to retreat from this confrontation to inside their own home had they chosen to do so. Accordingly, these defendants were not entitled to claim self-defense and Dale Burton was not justified in using force in their defense. Wenger, supra.
{¶ 38} This assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR OF JALANI SEALS
{¶ 39} "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT WAS NOT ACTING IN SELF-DEFENSE AS THE FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 40} Defendant Seals argues that the trial court's finding that he was not acting in self-defense is against the manifest weight of the evidence. Once again the State has failed to respond to this assignment of error.
{¶ 41} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175: { ¶ 42} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52.
{¶ 43} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
{¶ 44} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
{¶ 45} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
{¶ 46} Defendant has the burden of proving the affirmative defense of self-defense by a preponderance of the evidence. State v. Martin, supra; State v. Jackson, supra. In order to establish self-defense, Defendant must prove that (1) he was not at fault in creating the situation giving rise to the affray, (2) he has a bona fide belief that he is in imminent danger of death or great bodily harm and that his only means of escape from such danger is in the use of force, and (3) he has not violated any duty to retreat or avoid the danger. State v. Robbins, supra.
{¶ 47} The evidence presented by the State in the testimony of the two victims as well as eyewitnesses to this fight clearly demonstrates that Seals was at fault in creating the situation that led to the fight, and in fact started the fight when he punched Matthew Kurtz in the head, knocking him out. Even the testimony by defense witness, Patricia Burton, demonstrates that Seals was the person who first initiated physical contact with the victims by pushing Kurtz down onto the ground. Prior to that the confrontation had been merely a war of words. Defense witness Otto Burton, a participant in the fight, testified that Barlow initiated the physical contact by pushing Seals off of Kurtz's front porch steps. Seals then pushed Kurtz and he fell to the ground. That version of how this fight started is contradicted by both victims and two eyewitnesses to the fight.
{¶ 48} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts, the trial court here, to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. The trial court did not lose its way simply because, as the trier of facts, it chose to believe the victims rather than the defense witnesses as to how this fight started, which it was entitled to do. Having determined that the Defendants, including Seals, were at fault in starting this fight, the trial court correctly concluded that they could not claim self-defense. Robbins.
{¶ 49} In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way, or that a manifest miscarriage of justice has occurred. Defendant Seals' convictions are not against the manifest weight of the evidence.
THIRD ASSIGNMENT OF ERROR OF DALE BURTON, SR.
{¶ 50} "THE FINDING BY THE COURT THAT APPELLANT WAS NOT ACTING UNDER THE INFLUENCE OF A SUDDEN FIT OF PASSION OR RAGE DURING THE ASSAULT OF MATTHEW KURTZ AND JASON BARLOW WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."
{¶ 51} Defendant Dale Burton argues that the trial court's decision finding him guilty of felonious assault instead of the less serious offense of aggravated assault is against the manifest weight of the evidence because Burton acted under the influence of a sudden passion or in a sudden fit of rage brought on by some serious provocation by the victims reasonably sufficient to incite him into using deadly force. According to Burton, the serious provocation here was not mere words such as racial slurs, but rather the attack upon members of his family by the victims.
{¶ 52} The elements of felonious assault, R.C. 2903.11, and aggravated assault, R.C. 2903.12, are identical except for the mitigating factor of serious provocation in aggravated assault. State v. Deem (1988),40 Ohio St.3d 205. That mitigating factor requires that Defendant act under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force. R.C. 2903.12. Defendant has the burden or proving the mitigating factor by a preponderance of the evidence. Deem, supra.
{¶ 53} In State v. Shane (1992), 63 Ohio St.3d 630, the Supreme Court elaborated on what constitutes reasonably sufficient provocation to incite the defendant into using deadly force. First, an objective standard is applied to determine whether the alleged provocation is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. If that objective standard is met, the inquiry shifts to a subjective standard to determine whether the Defendant in the particular case actually was under the influence of sudden passion or in a sudden fit of rage. Ordinarily, words alone will not constitute reasonably sufficient provocation to incite the use of deadly force. Id. Neither will past incidents or verbal threats satisfy the test for reasonably sufficient provocation when there has been sufficient time for cooling off. State v. Mack, 82 Ohio St.3d 198, 1998-Ohio-375. Moreover, fear alone is insufficient to demonstrate sudden passion or fit of rage. Id.
{¶ 54} At trial Defendants claimed self-defense and defense of family/others. As an alternative theory, Defendants claimed that they acted under the influence of sudden passion or in a sudden fit of rage caused by provocation by the victims that is reasonably sufficient to incite defendants into using deadly force. That alleged provocation was not the racial slurs directed at Defendants by the victims, but rather the physical attack upon Seals, Otto Burton and Triana Burton by the victims. In finding Defendants guilty of felonious assault instead of aggravated assault, the trial court observed that the provocation by the victims in this case was not sufficient to arouse the passions of an ordinary person beyond the power of his or her control because words alone, even racial slurs, do not justify the use of deadly force and "that's what we have here."
{¶ 55} It is unclear from this record exactly what was transpiring when Dale Burton first arrived on the scene. From the testimony of all of the defense witnesses, including Mrs. Burton, Otto Burton and Dale Burton, as well as the testimony of Jason Barlow, it is clear that Barlow struck Otto Burton, Mrs. Burton and Triana Burton before Mrs. Burton called Dale Burton and he came to the scene. Dale Burton's own testimony indicates that when he first arrived on the scene he observed one of the victims "pressing at his kids," and that both Kurtz and Barlow attacked Dale Burton as soon as he arrived and that Burton and Barlow then went down to the ground fighting.
{¶ 56} This evidence fails to demonstrate that Dale Burton's wife or children were being assaulted when Burton arrived on the scene. Nor is there any evidence that Burton's children were assaulted by Barlow after Dale Burton arrived. There is evidence that Dale Burton had been told that members of his family were attacked before he arrived. While a serious matter, that evidence is insufficient to demonstrate provocation that is sufficient to arouse the passions of an ordinary person beyond the power of his or her control and that was reasonably sufficient to incite him into using deadly force. Accordingly, the evidence was legally insufficient to demonstrate aggravated assault.
{¶ 57} This assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. and Donovan, J., concur.