[Cite as *State v. Klinkner*, 2014-Ohio-2022.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-469 |
| v. | : | (C.P.C. No. 12CR-1089) |
| Kyle L. Klinkner, aka Klinker, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-521 |
| v. | : | (C.P.C. No. 12CR-1090) |
| Kenneth A. Bryant, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-595 |
| v. | : | (C.P.C. No. 12CR-1091) |
| William M. Bryant, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 13, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

*Todd Barstow*, for appellant Kyle L. Klinkner, aka Klinker.

*Scott & Nolder Co., L.P.A.*, and *Steven S. Nolder*, for appellant Kenneth A. Bryant.

*Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant William M. Bryant.

APPEALS from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1}   In these consolidated appeals, defendants-appellants William M. Bryant, Kenneth Bryant, and Kyle L. Klinkner each appeal from judgment entries of conviction and sentence entered by the Franklin County Court of Common Pleas.  For the following reasons, we affirm those judgments.

## I.  Factual and Procedural Background

{¶ 2}   A Franklin County Grand Jury indicted all three appellants with one count of felonious assault, in violation of R.C. 2903.11.  The charges arose out of a fight involving the three men and Kenneth's former employer, Victor Tantarelli, Sr.  Appellants entered not guilty pleas and proceeded to a trial.  Appellants waived their rights to a jury trial and all three appellants were tried together to the same judge.

{¶ 3}   Victor Tantarelli, Sr. ("Vic Sr.") owns a body shop in Columbus, Ohio, and employed Kenneth as an auto technician in 2011.  In December 2011, Kenneth stopped working for Vic Sr. and apparently left repair work on a number of cars unfinished.  According to Vic Sr.'s policy, however, he does not pay employees for their time until they complete their work on the assigned cars.  Because Kenneth left his work unfinished, he had not been paid for some of the time he had worked.

{¶ 4}   On January 6, 2012, Kenneth returned to the body shop to pick up his tools.  He brought with him his dad, William, and Kyle Klinkner.  William and Kyle were both auto technicians at Kenneth's new place of employment.  Kyle drove the three men to the body shop because he had a big truck that could hold Kenneth's tool box, which weighed almost 1,000 pounds.  The men went in the body shop, got the tool box, and brought it out to Kyle's truck.  Kenneth also handed his keys to the body shop to Vic Sr.'s son, Vic Jr.  The three men went back to the truck and remained there for 10 to 15 minutes.

{¶ 5}   At that point, the three men got out of the truck and walked back inside the body shop.  Kenneth went inside the office where Vic Sr. was eating lunch and William and Kyle stood outside the office door.  Kenneth asked Vic Sr. if he planned to pay him for the work Kenneth did on the unfinished jobs.  Vic Sr. told him that he would not pay him because Kenneth quit before the cars were finished.  The men began yelling at each other and Vic Sr. came out from behind the desk where he was sitting and approached Kenneth.  Here, the respective versions of events begin to diverge.

{¶ 6}   According to Vic Sr. and another employee of the body shop, when Vic Sr. approached Kenneth, Kenneth punched him twice in the chest.  He then pulled Vic Sr. down to the ground and pinned Vic Sr.'s arms close to his body.  While Kenneth held Vic Sr. down on the ground, William punched him a few times and Kyle kicked him a number of times.  Employees of the body shop soon came out and broke up the fight, after which William, Kenneth, and Kyle left the scene.  Vic Sr. sustained serious physical injuries as a result of the fight.

{¶ 7}   Appellants each presented slightly different versions of events.  They each testified that they went over to the body shop to get Kenneth's tools.  Kenneth testified, however, that he decided to ask Vic Sr. for some money that day because some repair shops will pay an auto technician for time spent working on a car even if the technician quits before completing the work.  When Vic Sr. told Kenneth he would not pay him, Kenneth swore at him and began walking out of the office.  According to Kenneth, Vic Sr. was yelling as Vic Sr. approached him.  Vic Sr. pushed him and Kenneth grabbed at Vic Sr. so he would not fall down.  The two men became entangled and fell to the floor.  Kenneth denied punching Vic Sr. or pinning his arms while they were on the ground.  He thought they were only on the ground for a few seconds until he was able to release himself from Vic Sr. and leave the scene.  He did not observe William or Kyle hit Vic Sr.

{¶ 8}   Kyle testified that he was standing near the office when he heard Kenneth and Vic Sr. yelling at each other.  He then saw Vic Sr. grab at Kenneth's shirt.  He did not see Kenneth punch Vic Sr.  Kyle thought that Kenneth lost his footing and grabbed at Vic Sr. to stop his fall.  The two men stumbled around and fell down.  Kyle stated he did see Kenneth holding Vic Sr.'s arms.  Kyle and William began to go toward the fight but as they

did, they saw Vic Jr. and another man coming to break up the fight. Kyle denied kicking Vic Sr. but testified that William punched Vic Sr. and may have kicked him once.

{¶ 9} William testified that all three of the men went inside the body shop so that Kenneth could get his last paycheck. Kenneth went into the office while William and Kyle stood nearby. Kenneth asked Vic Sr. for his check but Vic Sr. told him that he would not pay him because the work was not finished. The two men began to escalate their voices and then William saw Kenneth start to leave the office. Vic Sr. came at Kenneth and pushed him as if he wanted him out of the office. Vic Sr. also grabbed Kenneth and the two came "flying out" of the office and then fell down. (Tr. 996.) William did not see Kenneth punch Vic Sr. before they fell to the ground. According to William, Kenneth had Vic Sr. on the ground in a bear hug while Vic Sr. yelled for help. William saw Vic Sr. strangling Kenneth and also trying to kick him. William became scared for his son's life, so he approached the two men and kicked and hit Vic Sr. to free Kenneth from the altercation. Shortly thereafter, the other men came to the scene of the fight and broke it up.

{¶ 10} The trial judge found all three appellants guilty of felonious assault. The judge found the appellants' version of events not credible and concluded that they went to the body shop to either get money from Victor Sr. or to beat him up. The trial court sentenced them accordingly.

## II. The Appeals

{¶ 11} All three appellants appeal their convictions.

{¶ 12} William Bryant assigns the following errors:

> [1.] Given the nature of the case, the evidence presented by the State, and the defenses asserted by Defendant-Appellant, the failure of the trial court to conduct a hearing to evaluate the nature and extent of plea negotiations was error.

> [2.] The judgment of the trial court is not supported by sufficient, credible evidence.

> [3.] The judgment of the trial court is against the manifest weight of the evidence.

{¶ 13} Kyle L. Klinkner assigns the following errors:

[1.] WHEN A MOTION FOR NEW TRIAL IS FILED ON THE TRIAL LEVEL AFTER A NOTICE OF APPEAL GRANTS JURISDICTION TO THE COURT OF APPEALS, THE BEST INTERESTS OF ALL PARTIES WOULD BE SERVED IF THIS COURT REMANDS THE APPEAL TO THE TRIAL COURT TO LITIGATE THE NEW TRIAL MOTION.

[2.] PREJUDICIAL ERROR OCCURS WHEN THE ACCUSED IS TRIED WITH TWO CO-DEFENDANTS, AND TESTIMONY SHOWS ANTAGONISTIC DEFENSES BETWEEN THE ACCUSED AND THE OTHER TWO CO-DEFENDANTS, MANDATING SEVERANCE, CONSISTENT WITH THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

[3.] WHEN THE ACCUSED WAIVES A TRIAL BY JURY, BUT DOES SO WITH TWO OTHER CO-DEFENDANTS, THE CASE MUST BE REMANDED TO DETERMINE WHETHER THE WAIVER WAS INVOLUNTARY AND OCCURRED AS A RESULT OF AN AGREEMENT WITH THE OTHER CO-DEFENDANTS, CONTRA THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

[4.] WHEN THERE IS NO INDICATION DURING THE PRE-TRIAL STAGES OF THE STATUS OF PLEA NEGOTIATIONS, UNDER THE UNITED STATES SUPREME COURT CASE OF LAFLER V. COOPER, THE CASE MUST BE REMANDED TO THE TRIAL COURT FOR A HEARING TO DETERMINE WHETHER THE ACCUSED WAS PROPERLY ADVISED BY HIS ATTORNEY CONSISTENT WITH THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

[5.] WHEN TRIAL COUNSEL COMMITS CONSTITU-TIONAL VIOLATIONS REPRESENTING THE ACCUSED DURING THE PRE-TRIAL AND TRIAL STAGES, THE CASE MUST BE REVERSED AND REMANDED FOR A NEW TRIAL BECAUSE OF INEFFECTIVE ASSISTANCE OF COUNSEL, CONTRA THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

{¶ 14} Finally, Kenneth Bryant assigns the following errors:

[1.] APPELLANT KENNETH BRYANT WAS DEPRIVED OF DUE PROCESS WHEN THE STATE AMENDED THE INDICTMENT.

[2.] APPELLANT KENNETH BRYANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEYS FAILED TO MOVE FOR JUDGMENT OF ACQUITTAL AFTER THE STATE'S OPENING STATEMENT.

[3.] APPELLANT KENNETH BRYANT'S CONVICTION DEPRIVED HIM OF DUE PROCESS BECAUSE IT WAS BASED ON INSUFFICIENT EVIDENCE OR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

[4.] WHEN THERE IS NO INDICATION OF THE STATUS OF PLEA NEGOTIATIONS, UNDER *LAFLER V. COOPER*, APPELLANT KENNETH BRYANT'S CASE MUST BE REMANDED FOR A HEARING TO DETERMINE WHETHER HE WAS PROPERLY ADVISED OF THE PLEA OFFER.

{¶ 15} We will address the assignments of error out of order and, where appropriate, together.

## A. Kyle's Individual Assignments of Error

### 1. Severance

{¶ 16} Kyle argues in his second assignment of error that the trial court erred by not severing his trial from his co-defendants. We disagree.

{¶ 17} Before addressing the merits of Kyle's claim, we note that he never asked the trial court to sever his trial from his co-defendants. That failure forfeits error on appeal absent plain error. *State v. Lott*, 51 Ohio St.3d 160, 164 (1990). Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Even if an error satisfies these prongs, appellate courts are not required to correct the error. Appellate courts retain discretion to correct plain errors. *Id.*; *State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, ¶ 12 (10th Dist.). Courts are to notice plain error under Crim.R. 52(B) " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of syllabus.

{¶ 18} Crim.R. 8(D) provides that co-defendants may be tried together for a non-capital offense as long as they are alleged to have participated in the same act or transaction or in the same course of criminal conduct.  *State v. Walters*, 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 21.  As a general rule, the law favors joinder of trials because, among other reasons, it conserves judicial resources and reduces the possibility of incongruous results before different juries.  *Id.*; *State v. Miller*, 10th Dist. No. 11AP-899, 2013-Ohio-1242, ¶ 50.  Nevertheless, a defendant may move for severance from a co-defendant's trial pursuant to Crim.R. 14 upon a showing of prejudice.  *Lott* at 163.  The defendant has the burden to affirmatively demonstrate prejudice.  *State v. Payne*, 10th Dist. No. 02AP-723, 2003-Ohio-4891, ¶ 23.

{¶ 19} Appellants' indictment alleged that they participated in the same act.  Therefore, under Crim.R. (8), it was appropriate for them to be tried together.  Kyle argues, however, that his trial should have been severed because of the antagonistic defenses which arose between himself and his co-defendants.  Antagonistic defenses can prejudice co-defendants to warrant severance.  *Walters* at ¶ 23-24.  Defenses are mutually antagonistic where each defendant attempts to exculpate himself and inculpate his co-defendants.  *Walters*.  To merit severance, the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive.  *Miller* at ¶ 52, citing *Walters.*

{¶ 20} We reject Kyle's claim that his defense was mutually antagonistic with that of the Bryants' defenses.  Kyle's defense at trial was that he did not kick or hit Vic Sr.  Alternatively, William's defense at trial was that he acted in defense of his son and Kenneth argued that the state failed to meet its burden of proof to prove that he assaulted Vic Sr.  These defenses did not attempt to exculpate one person while inculpating another.  In fact, neither William nor Kenneth testified that Kyle ever hit Vic Sr. or otherwise placed blame on Kyle.  Simply put, there is nothing antagonistic about the defenses these appellants presented at trial.  Accordingly, the trial court did not err, let alone commit plain error, by not severing Kyle's trial from that of his co-defendants.  We overrule Kyle's second assignment of error.

## 2. Jury Waiver

{¶ 21} Kyle argues in his third assignment of error that we should remand this case for the trial court to determine whether he knowingly and voluntarily waived his right to a jury trial. We disagree.

{¶ 22} At the start of his trial, Kyle signed a document in which he "voluntarily waive[d] and relinquish[ed] my right to a trial by jury and elect[ed] to be tried by a judge." Upon receiving the document, the trial court asked Kyle whether he could read and write English, whether his trial counsel explained the document to him and if he understood the document, and whether he understood the right to a jury trial that he sought to waive. Lastly, the trial court asked him if this was his "free and voluntary act." (Tr. 4-6.) Kyle replied affirmatively to each question and the trial court accepted his waiver and had it filed in the record.

{¶ 23} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by jury. *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 6, citing *Duncan v. Louisiana*, 391 U.S. 145 (1968). Likewise, Ohio Constitution, Article I, Section 5, states that the "right of trial by jury shall be inviolate." However, Crim.R. 23(A) allows a defendant to waive his right to a trial by jury in serious offense cases provided that the waiver is made knowingly, intelligently, and voluntarily, and in writing. Additionally, pursuant to R.C. 2945.05, for a waiver of jury trial to be valid, it must be in writing, signed by the defendant, filed, made part of the record, and made in open court. *Lomax* at ¶ 9; *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, ¶ 11 (10th Dist.). A written waiver is presumptively voluntary, knowing, and intelligent. *Lomax* at ¶ 10.

{¶ 24} Kyle concedes that the trial court complied with Crim.R. 23(A) and R.C. 2945.05. Further, he does not argue that his waiver was not voluntary. Instead, he argues that in light of the antagonistic defenses that developed between him and his co-defendants, this court should remand the matter for the trial court to further question him about the voluntary and intelligent nature of his waiver. We disagree. Kyle has not alleged or demonstrated any error below and, in fact, concedes that the trial court satisfied its obligations before accepting his waiver. Accordingly, we overrule Kyle's third assignment of error.

### 3. Motion for New Trial

{¶ 25} Kyle also seeks this court to stay these proceedings and to remand his case for the trial court to rule on a pending motion for new trial. We already denied Kyle's first request for the same relief and he presents nothing new to justify a different decision. *State v. Klinkner*, 10th Dist. No. 13AP-469, Sept. 24, 2013 (journal entry). Therefore, we deny this relief.

### 4. Conclusion

{¶ 26} We overrule Kyle's first, second, and third assignments of error.

## B. Kenneth's Individual Assignment of Error

### 1. The State's "amendment" of his Indictment

{¶ 27} The grand jury indicted Kenneth with a single count of felonious assault in violation of R.C. 2903.11(A). Kenneth argues in his first assignment of error that the state "constructively amended" that indictment during his trial. Specifically, Kenneth points out that he was originally charged as a principal offender but then identified as an aider and abettor during trial. We reject this argument.

{¶ 28} The state did not need to amend the indictment to proceed under an aiding and abetting theory against Kenneth. Pursuant to R.C. 2923.03(F), "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is "stated * * * in terms of the principal offense" and does not mention complicity. *State v. Herring*, 94 Ohio St.3d 246, 251 (2002). R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense. *See State v. Keenan*, 81 Ohio St.3d 133, 151 (1998).

{¶ 29} Kenneth's reliance on *State v. Killings*, 1st Dist. No. C-970167 (May 29, 1998), in support of this assignment of error is misplaced, as it is factually distinguishable from the present matter. In that case, the defendant was charged as a principal offender for one count of rape. However, the trial court instructed the jury on complicity for a separate rape (of the same victim) committed by another individual for which Killings was not charged with nor provided an opportunity to defend. The jury found Killings guilty of one count of rape, but the appellate court concluded that because of the complicity

instruction, they could not determine what act the jury actually found him guilty of: rape, or that of aiding and abetting a separate rape.   Thus, the court concluded that the complicity instruction was error.

{¶ 30} Here, there are no uncharged acts that Kenneth faced at trial such as in *Killings*.  All three appellants faced the same charges that arose from the same conduct. Accordingly, Kenneth's reliance on *Killings* is unpersuasive.

{¶ 31} The state did not amend Kenneth's indictment.  The indictment charged him with a count of felonious assault and, pursuant to R.C. 2923.03(F), that indictment put Kenneth on notice that he also could be found complicit in the commission of that offense.  Accordingly, we overrule Kenneth's first assignment of error.

### C.  The Sufficiency and Manifest Weight of the Evidence

{¶ 32} Kenneth's third assignment of error and William's second and third assignments of error each contend that their convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.  We disagree.

{¶ 33} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Whether the evidence is legally sufficient to support a verdict is a question of law.  *Id.*

{¶ 34} In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact.  *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 35} In this inquiry, appellate courts do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence admitted at trial supports the conviction.  *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*,

10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.").

{¶ 36} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. (Although there may be sufficient evidence to support a judgment, a court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.*)

{¶ 37} When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 38} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

### 1. The Elements of the Convictions

{¶ 39} In order to find appellants guilty of felonious assault, the state had to prove that they knowingly caused serious physical harm to another. R.C. 2903.11(A).

### 2. Appellants' Sufficiency Arguments

{¶ 40} Kenneth argues that the evidence was insufficient to prove that he was complicit or aided and abetted the others in the attack on Victor Sr. We disagree.

{¶ 41} It is not clear whether the trial court found Kenneth guilty as a principal offender or as an aider and abetter. Even if the trial court found him guilty of aiding and abetting, rather than as a principal offender, that conviction would be supported by sufficient evidence.

{¶ 42} R.C. 2923.03(A)(2) prohibits someone from aiding or abetting another in committing an offense. To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. Such criminal intent can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed. *Id.* at 245. It may also be inferred from the circumstances surrounding the crime. *Columbus v. Bishop*, 10th Dist. No. 08AP-300, 2008-Ohio-6964, ¶ 41.

{¶ 43} Here, testimony from Vic Sr. and the other employee who saw the entire fight indicated that Kenneth punched Vic Sr. twice, pulled him to the ground, held him down, and pinned his arms, allowing William and Kyle to hit Vic Sr. when Vic. Sr. could not defend himself. *Bishop* at ¶ 45 (act of holding down was sufficient, by itself, to convict as an aider and abetter). Viewing this evidence in the most favorable light to the state, as we must, the evidence is sufficient evidence for a reasonable trier of fact to conclude that Kenneth, at a minimum, assisted, supported, or cooperated in the assault of Vic Sr.

{¶ 44} William argues that the evidence was insufficient to prove that he knowingly caused Vic Sr. serious physical harm. We disagree.

{¶ 45} R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is

aware that such circumstances probably exist." *State v. Ranson*, 10th Dist. No. 01AP-1049, 2002-Ohio-2398, ¶ 17. " 'Knowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of 'purposely.' Instead, whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." (Footnote omitted.) *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist.2001). " 'The test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria. * * * However, if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts.' " *State v. Thomas*, 10th Dist. No. 02AP-778, 2003-Ohio-2199, ¶ 75, quoting *State v. McDaniel*, 2d Dist. No. 16221 (May 1, 1998).

{¶ 46} William admitted that he kicked Vic Sr. and hit him with his hand at least twice. While he claims that he did so in defense of his son, such a defense presumes an intentional and purposeful use of force. *See State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 54. William's testimony alone is sufficient for a reasonable fact finder to conclude that William acted knowingly.

### 3. Appellants' Manifest Weight of the Evidence Arguments

{¶ 47} In arguing that their convictions were against the manifest weight of the evidence, Kenneth claims that Vic Sr.'s testimony was not credible. He notes several purported inconsistencies in Vic Sr.'s testimony.

{¶ 48} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was offered at trial. *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831, ¶ 23. The trier of fact is in the best position to take into account the inconsistencies in the evidence, as well as the demeanor and manner of the witnesses, and to determine which witnesses are more credible. *State v. DeJoy*, 10th Dist. No. 10AP-919, 2011-Ohio-2745, ¶ 27. While appellant points to certain portions of Vic Sr.'s testimony that were inconsistent with his prior descriptions of the events, these inconsistencies do not render the conviction against the manifest weight of the evidence. The judge was aware of these inconsistencies and chose to believe Vic Sr.'s testimony describing the fight. This is within the province of the trier of fact. *State v. Conkel*, 10th

Dist. No. 08AP-845, 2009-Ohio-2852, ¶ 17-18; *State v. Thompson*, 10th Dist. No. 08AP-22, 2008-Ohio-4551, ¶ 20-21. Additionally, we note that another employee who saw the fight provided testimony that was largely consistent with Vic Sr.'s testimony.

{¶ 49} Next, William argues that his conviction is against the manifest weight of the evidence because he established that he acted in defense of his son. We disagree.

{¶ 50} Defense of family, being a variation of self-defense, is an affirmative defense that the defendant has the burden of proving by a preponderance of the evidence. R.C. 2901.05(A); *State v. Seals*, 2d Dist. No. 04CA0063, 2005-Ohio-4837, ¶ 34, citing *State v. Martin*, 21 Ohio St.3d 91 (1986). Ohio has long recognized a privilege to defend the members of one's family. *Sharp v. State*, 19 Ohio 379 (1850). If a person in good faith and upon reasonable grounds believes that his wife and family are in imminent danger of death or serious bodily harm, that person is entitled to use such reasonably necessary force, even to the taking of life, to defend his wife and family as he would be entitled to use in defense of himself. *State v. Williford,* 49 Ohio St.3d 247 (1990). However, a person who intervenes to help another stands in the shoes of the person whom he is aiding. If that person is at fault, and therefore not entitled to use force in self-defense, the intervenor is not justified in using force in that person's defense. *See State v. Wenger*, 58 Ohio St.2d 336, 338-39 (1979).

{¶ 51} The state's version of events refutes Williams' claim that he acted in defense of his son. The state's witnesses described a scene where Kenneth began the confrontation by punching Vic Sr. twice in the chest. Moreover, Kenneth was holding Vic Sr. down with his arms pinned against him while William and Kyle assaulted him. A conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the appellant's version. *State v. Webb*, 10th Dist. No. 10AP-189, 2010-Ohio-5208, ¶ 16; *Strider-Williams* at ¶ 13. The judge, as the trier of fact, was free to disbelieve William's version of events and believe the state's version of events. That decision was within the province of the trial judge. *State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 18-19 (jury's decision to reject claim of self-defense and believe prosecution's version of events not against manifest weight of the evidence); *Webb* at ¶ 17. Given the conflicting testimony regarding how this fight started and what occurred during the fight, this is not the exceptional case in which

the evidence weighs heavily against the conviction.  *Seals* at ¶ 47-48 (trial court did not lose its way in rejecting claim of self-defense).

{¶ 52} Given the conflicting testimony presented, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice. The judge simply believed the version of events presented by the state's witnesses and disbelieved appellants' version of events. This was within the province of the judge as the trier of fact. Accordingly, appellants' convictions are not against the manifest weight of the evidence.

{¶ 53} Appellants' convictions for felonious assault are supported by sufficient evidence and are not against the manifest weight of the evidence.  Accordingly, we overrule Kenneth's third assignment of error and William's second and third assignments of error.

### D. Ineffective Assistance of Counsel

{¶ 54} Each appellant raises certain claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, appellant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The failure to make either showing defeats a claim of ineffective assistance of counsel.  *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶ 55} In order to show counsel's performance was deficient, the appellant must prove that counsel's performance fell below an objective standard of reasonable representation.  *Jackson* at ¶ 133.  The appellant must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance.  *Strickland* at 689.  To show prejudice, the appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.

### 1. Plea Negotiations and *Lafler v. Cooper*

{¶ 56} In William's first assignment of error and in Kyle and Kenneth's fourth assignments of error, all three appellants attempt to raise ineffective assistance of counsel claims under *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012). In that case, and the related case of *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399 (2012), the United States Supreme Court held that the Sixth Amendment's right to effective assistance of counsel extends to the plea bargaining process. *Lafler* at 1384.

{¶ 57} In their assignments of error, however, appellants do not allege that their trial counsel acted deficiently in the plea bargaining process. Instead, they seek a remand of this matter for the trial court to hold a hearing to determine whether the state offered a plea bargain that trial counsel did not communicate to them. Because appellants fail to allege, let alone demonstrate, error, we have no reason to remand the matter.

### 2. Appellants' Claims of Ineffective Assistance of Counsel

{¶ 58} Kenneth and Kyle, in their second and fifth assignments of error, respectively, assert other claims of ineffective assistance of counsel.

{¶ 59} Kenneth specifically argues that his trial counsel was ineffective for not moving for a judgment of acquittal after the state's opening argument. Kenneth is mistaken. Trial counsel did move for a judgment of acquittal after the state's opening argument, which the trial court denied. (Tr. 27.)

{¶ 60} Kyle asserts a number of instances of alleged ineffective conduct by his counsel. First, he argues that trial counsel deficiently failed to file a motion to sever his trial from his co-defendants. We have already concluded that appellants did not have antagonistic defenses. Therefore, a motion to sever would have been meritless. Therefore, trial counsel was not ineffective for failing to file a motion to sever. *State v. Kelley*, 179 Ohio App.3d 666, 2008-Ohio-6598, ¶ 76 (7th Dist.); *State v. Simms*, 10th Dist. No. 10AP-1063, 2012-Ohio-2321, ¶ 49.

{¶ 61} Second, Kyle appears to argue that counsel was ineffective for allowing him to waive his right to a jury trial. The record demonstrates, as noted above, that Kyle's choice to waive his right to a jury trial was voluntary and that the trial court fulfilled its obligation to ensure that his choice was voluntary. This defeats any claim of alleged

ineffective assistance of counsel with respect to the jury waiver. *State v. Webb*, 10th Dist. No. 10AP-289, 2010-Ohio-6122, ¶ 70-72.

{¶ 62} Third, Kyle argues that trial counsel acted deficiently by not interviewing a witness and not securing his presence at trial. Even assuming this was deficient conduct, Kyle cannot demonstrate that he was prejudiced. He speculates without any evidentiary support that this witness's testimony would have been important. It is pure speculation to conclude that the result of his trial would have been different had the additional witness testified. *Williams* at ¶ 35, citing *State v. Thorne*, 5th Dist. No. 2003CA00388, 2004-Ohio-7055, ¶ 70 (failure to show prejudice without affidavit describing testimony of witnesses not called); *State v. Stalnaker*, 5th Dist. No. 21731, 2004-Ohio-1236, ¶ 9. This type of vague speculation is insufficient to establish ineffective assistance of counsel. *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 30.

{¶ 63} Lastly, Kyle argues that trial counsel deficiently questioned Vic. Sr. during his cross-examination by not asking him about allegedly inconsistent statements he made in a pre-trial deposition. We disagree. The scope of cross-examination clearly falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, ¶ 45, citing *State v. Campbell*, 90 Ohio St.3d 320, 339 (2000).

{¶ 64} Each of the appellants has failed to demonstrate ineffective assistance of counsel. Accordingly, we overrule William's first assignment of error, Kyle's fourth and fifth assignments of error, and Kenneth's second and fourth assignments of error.

## III. Conclusion

{¶ 65} Having overruled all of the assignments of error presented by these appellants, we affirm the judgments of the Franklin County Court of Common Pleas in each of these cases.

*Judgments affirmed.*

CONNOR and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).