[Cite as *State v. Fickenworth*, 2014-Ohio-2502.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio, :

    Plaintiff-Appellee, :

                                  No. 13AP-826

v. : (C.P.C. No. 13CR-126)

Brad Fickenworth, : (REGULAR CALENDAR)

    Defendant-Appellant. :

---

D E C I S I O N

Rendered on June 10, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*W. Joseph Edwards*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendant-appellant, Brad Fickenworth, appeals from a judgment of conviction and sentence by the Franklin County Court of Common Pleas. He assigns three errors for our review:

> I. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE PLEA-BARGAINING PROCESS THEREBY VIOLATING HIS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS.
>
> II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL THEREBY DEPRIVING HIM OF THE RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS.

III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT REFUSED TO GIVE AN INSTRUCTION FOR ABANDONMENT THEREBY DEPRIVING HIS RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}  On January 9, 2013, appellant was indicted for conspiracy to commit aggravated murder.  The indictment was later amended by agreement of the parties to charge appellant with conspiracy to commit murder, a first degree felony, in violation of R.C. 2923.01 and 2903.02.  The indictment was based on allegations that, in December 2012, appellant conspired with others in a plot to kill Tammy Lytle.  The matter was tried to a jury.

{¶ 3}  Prior to trial, the state made appellant a plea offer in writing.  Appellant and his counsel both signed the form, which contained the following language:

> I, Brad Fickenworth, * * * hereby state that my attorney has thoroughly reviewed the facts of this case with me, including possible defenses and the strengths and weaknesses of my case.  **THE DECISION TO GO TO TRIAL OR PLEAD GUILTY RESTS ENTIRELY WITH ME, THE DEFENDANT.**  Some attorneys make recommendations to their clients about whether to plead guilty or go to trial and some do not, although each attorney will point out the consequences of going to trial and the consequences of pleading guilty.  By signing this form, I certify that my attorney has met his obligations as set forth above, and also certify that I have had sufficient time to independently consider the plea offer, and that my acceptance or rejection of that plea is my own decision.

(Emphasis sic.)  (R. 66.)

{¶ 4}  Before appellant's trial began, outside of the presence of the jury, the trial court reviewed the plea offer, memorialized above, with appellant and counsel.  The following discourse took place:

> [PROSECUTOR]: [W]e were willing to offer [appellant] the opportunity to do the proffer. We wanted to hear what information he had to provide against his co-[d]efendant, Dan Lytle. We then were going to provide our detective with that information to verify if it was accurate.  And if we believe that

[appellant] was being truthful and -- at that point I think we were prepared to engage in negotiations with defense counsel.

Specifically, I cannot say exactly what the offer would be. But it would have to have been to a felony offense.

THE COURT: Okay. And so it would be significantly less, if you will, than a felony of the first degree for which he is charged.

[PROSECUTOR]: Absolutely.

THE COURT: Okay. Do you understand the offer, sir?

[APPELLANT]: Yes, sir.

* * *

THE COURT: The question then basically to [defense counsel] comes down to this. That you're not only certifying that you conveyed the offer. Obviously [appellant] is now aware of it. But that you and co-counsel * * * have done your job in this case. In other words, you've thoroughly investigated the case, you've discussed the case thoroughly with your client as to the strengths and weaknesses of the State's case, any possible defenses that you might have, and that you've pointed out to your client the possible consequences of this is what can happen if you go to trial, this is what can happen if you take the plea.

Have both of you done all that for your client?

[DEFENSE COUNSEL]: Yes.

[DEFENSE CO-COUNSEL]: Yes, Your Honor.

* * *

THE COURT [to appellant]: I see a signature at the bottom of this page. Obviously this is all electronically done. But is this your signature?

[APPELLANT]: Yes, sir.

THE COURT: All right. Is there anything -- is what [defense counsel] and [defense co-counsel], what they've both said correct? In other words, have they done their job for you?

[APPELLANT]: Yes, sir.

THE COURT: You're thoroughly satisfied with the work and preparation that they've put into this case?

[APPELLANT]: Absolutely, sir.

* * *

THE COURT: What I'm concerned about here is that you've had enough time to think this over. In other words, so that the decision to go forward with the trial is your decision and not someone else's, that they forced you into this or anything. Is this your considered decision to go to trial[?]

[APPELLANT]: Yes, sir. It's my decision.

(Tr. Vol. I, 5-8.) Following that conversation, trial commenced.

{¶ 5} The state presented evidence to establish that appellant hired Terry Webb to kill Tammy Lytle at the request of her estranged husband, Dan Lytle. Mr. Lytle did not want Ms. Lytle to appear at an upcoming court hearing. Appellant gave Webb $3,500 of Mr. Lytle's money, a burner cell phone, and photographs of Ms. Lytle. Appellant made numerous phone calls, sent text messages, and engaged in various other acts to promote and facilitate the murder. Pertinent phone calls and text messages were supported by cell phone records at trial.

{¶ 6} Webb reported the plot to the Columbus Police Department and cooperated with their investigation of appellant. The police oversaw and recorded phone conversations between appellant and Webb, which were played during trial. Webb described the endeavor as a "big job" during a recorded conversation, to which appellant responded: "How is it a big job? Walk up, slit [her] throat and leave." (Tr. Vol. I, 77-78.) Webb repeatedly asked for more money before he did the job, and appellant stated: "Business is over." (Tr. Vol. I, 88.) "Once [Mr. Lytle] makes it home and this job ain't done, me and his contract's over. He done told me that. So I might as well take care of [it] myself." (Tr. Vol. I, 88.) Webb testified that appellant called him two days later and cancelled the deal between them. According to Webb, appellant wanted the money back because he was going to get somebody else to do the job.

{¶ 7}   Appellant testified on his own behalf.  He denied being part of a conspiracy to murder Ms. Lytle.  According to appellant, he participated in a plan to steal Ms. Lytle's car and hide it on the morning of a court date so that she would not appear.  He acted as a middleman by hiring Webb to steal the car at Mr. Lytle's request.  He claimed Mr. Lytle and Webb changed the plan to killing Ms. Lytle without his knowledge.  When he found out, he attempted to leave or end the conspiracy.

{¶ 8}   Appellant explained, when he said "business is over" to Webb during the recorded phone call, he meant he was done with the conspiracy.  (Tr. Vol. III, 510.)  He later contacted Webb about returning the money with the intention "[t]o end the contract, the business agreement that everybody was on."  (Tr. Vol. III, 524.)  Appellant testified that he visited Mr. Lytle in person and "told him that everything got out of hand pretty much.  I said that it was -- we needed to talk about ending this and getting his money back.  And I was showing him the text messages that me and Mr. Webb * * * was having and [Mr. Lytle] agreed."  (Tr. Vol. III, 525.)  Appellant then attempted to meet Webb to retrieve the money, but he was arrested on the way.  Appellant believed he needed to have an additional conversation with Webb to make it clear the conspiracy was over.  Appellant was asked: "You never informed Terry Webb of cancelling whatever plan you [are] testifying you were a part of, correct?"  (Tr. Vol. III, 587.)  He responded, "I never got the chance to, ma'am.  I got hit by SWAT leaving my driveway."  (Tr. Vol. III, 587.)  When asked about his comment regarding slitting Ms. Lytle's throat, appellant said, "I was more mad than anything.  I just said something I shouldn't have said."  (Tr. Vol. III, 552.)

{¶ 9}   After the close of evidence, outside the presence of the jury, the trial court consulted with appellant's trial counsel and the assistant prosecutor regarding jury instructions.  Appellant's counsel requested an instruction on the affirmative defense of abandonment.  The trial court denied the request because appellant did not acknowledge he conspired to commit murder before asserting he abandoned the conspiracy.  The court stated, "you cannot abandon that which was never entered into."  (Tr. Vol. IV, 623.)  Relying in part on *State v. Jewell*, 5th Dist. No. 99 CA 1 (Nov. 17, 1999), the trial court determined the instruction would not be given.

{¶ 10}  The jury returned a verdict finding appellant guilty of conspiracy to commit murder.  Appellant was then sentenced accordingly, and this timely appeal followed.

## II. DISCUSSION

{¶ 11} For ease of discussion, we address appellant's assignments of error out of order. Under his third assignment of error, appellant asserts the trial court committed prejudicial error by refusing to instruct the jury on the affirmative defense of abandonment. We disagree.

{¶ 12} "A court reviewing a trial court's refusal to submit to the jury a requested instruction must determine whether the trial court's decision constituted 'an abuse of discretion under the facts and circumstances of the case.' " *State v. Juntunen*, 10th Dist. No. 09AP-1108, 2010-Ohio-5625, ¶ 13, quoting *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "The trial court possesses the discretion 'to determine whether the evidence presented at trial is sufficient to require that [the] instruction be given.' " *Id.*, quoting *State v. Lessin*, 67 Ohio St.3d 487, 494, (1993). "[A] court need not instruct the jury as a party requests if 'the evidence adduced at trial is legally insufficient' to support it." *Id.*, quoting *State v. Barnd*, 85 Ohio App.3d 254, 259 (3d Dist.1993).

{¶ 13} Abandonment is described in R.C. 2923.01(I)(2), which reads:

> (I) The following are affirmative defenses to a charge of conspiracy:
>
> * * *
>
> (2) After conspiring to commit an offense, the actor abandoned the conspiracy prior to the commission of or attempt to commit any offense that was the object of the conspiracy, either by advising all other conspirators of the actor's abandonment, or by informing any law enforcement authority of the existence of the conspiracy and of the actor's participation in the conspiracy.

{¶ 14} In support of his assignment of error, appellant points out that Webb testified appellant cancelled the deal between them. Appellant argues this resulted in a dispute regarding "whether appellant canceled the entire deal to kill the alleged victim or

just the agreement with Webb," and the jury could have believed that appellant abandoned the entire conspiracy. (Appellant's Brief, 18.)

{¶ 15} Appellant's argument ignores that he unequivocally denied being involved in a conspiracy to commit murder at trial. He claimed he was involved in a plot to steal Ms. Lytle's car. "Under Ohio law, an affirmative defense is justification for admitted conduct, which does not 'seek to negate any of the elements of the offense which the state is required to prove.' " *Gahanna v. Cameron*, 10th Dist. No. 02AP-255, 2002-Ohio-6959, ¶ 28, quoting *State v. Martin*, 21 Ohio St.3d 91, 94 (1986). As the trial court noted, appellant did not acknowledge he conspired to commit murder—the sole offense for which he was charged—and argue he abandoned the conspiracy. Appellant's position at trial was an attempt to negate the elements of the state's case. He did not put forth an affirmative defense. He denied the conduct. Accordingly, the trial court did not abuse its discretion by declining to instruct the jury on abandonment.

{¶ 16} Additionally, we find *Jewell*, which the trial court relied on, instructive. The Fifth District Court of Appeals wrote:

> Defense counsel requested the trial court to instruct the jury on the affirmative defense of abandonment. The trial court denied defense counsel's request finding appellant's denial of a conspiracy to murder precluded an instruction on abandonment. * * * Appellant argues the taped conversations he had with the informant and Keeton's girlfriend establishes his intent to abandon the conspiracy.
>
> The record indicates, at trial, appellant denied the existence of a conspiracy to murder. An accused is not entitled to an instruction on voluntary abandonment unless such was the defense at trial. The trial court correctly determined not to instruct on the affirmative defense of abandonment on the basis that, at trial, appellant denied the existence of a conspiracy to murder.

(Internal quotations and citations omitted.)

{¶ 17} Appellant makes a general claim regarding prejudice, stating "[w]ith no jury instruction on abandonment, the jury had no other option than to find appellant guilty." (Appellant's Brief, 12.) We cannot agree. If the jury believed appellant's testimony that he did not engage in a conspiracy to commit murder, appellant would have been acquitted.

{¶ 18} Accordingly, appellant's third assignment of error is overruled.

{¶ 19} Appellant's first and second assignments of error are interrelated and will be addressed together. Therein, appellant asserts he was denied effective assistance of counsel during plea bargaining and at trial.

{¶ 20} The standard for assessing ineffective assistance of counsel claims is well-established:

> [A]ppellant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").
>
> In order to show counsel's performance was deficient, the appellant must prove that counsel's performance fell below an objective standard of reasonable representation. *Jackson* at ¶ 133. The appellant must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland* at 689. To show prejudice, the appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.

*State v. Klinkner*, 10th Dist. No. 13AP-469, 2014-Ohio-2022, ¶ 54-55.

{¶ 21} Appellant contends his trial counsel did not understand the charge against him, nor did she understand the affirmative defense of abandonment. He believes her lack of understanding prevented her from providing him with a competent defense at trial. Appellant directs our attention to various points in the record where the trial court and his counsel did not see eye-to-eye regarding conspiracy and abandonment. He also points out, during trial, his counsel attempted to establish abandonment by playing a recorded phone call, which appellant made to Mr. Lytle after appellant was arrested and under the supervision of police. The trial court did not allow counsel to play the recording. Appellant takes issue with his counsel's inability to "explain why it was not hearsay." (Appellant's Brief, 15.)

{¶ 22} We have reviewed the record and recognize that there was some confusion regarding the affirmative defense of abandonment. We do not perceive the confusion as stemming from a failure to understand the concept of abandonment. Instead, there were various disagreements about how the affirmative defense could be established. The record does not support appellant's contention that his trial counsel did not understand the offense of conspiracy to commit murder. In any event, appellant's claim of ineffective assistance during trial fails because he cannot establish he was prejudiced.

{¶ 23} Here, again, appellant fails to appreciate the impact of his own testimony on the proceedings. Regardless of his trial counsel's efforts to establish abandonment, appellant denied he ever engaged in a conspiracy to commit murder. As explained above, his stance eliminated abandonment as an affirmative defense. Appellant does not argue his trial counsel was deficient in assisting him with his denial of the state's allegations. As such, appellant cannot establish that, but for the alleged shortcomings of his counsel, there is a reasonable probability the result of his trial would have been different.

{¶ 24} Appellant asks this court to assume that, because his trial counsel exhibited a lack of understanding of the charge against him and abandonment, counsel was deficient when she advised him during the plea bargaining process. We decline to make such an assumption. We have already addressed the premise that counsel lacked understanding. More importantly, there is no evidence in the record to establish appellant's trial counsel was deficient during plea bargaining. There is only evidence to the contrary as detailed in the facts above. Therefore, appellant cannot establish that he received ineffective assistance of counsel during either plea bargaining or trial. Accordingly, appellant's first and second assignments of error are overruled.

## III. CONCLUSION

{¶ 25} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.